PEOPLE v WILLIAMS

PEOPLE v ANDERSON

PEOPLE v RESPRESS

PEOPLE v JOHNSON

Docket No. 64639. Argued January 7, 1981 (Calendar No. 6).—Decided
   December 23, 1982.

   Harold Williams, Frank Anderson, Lavoier Respress, and Wilbur
      Johnson were convicted by a jury in the Recorder's Court of
      Detroit, Donald L. Hobson, J., of first-degree criminal sexual
      conduct. The defendants argued that the complainant had
      consented to acts of sexual intercourse with them as a group,
      and sought to present evidence of the complainant's prior
      sexual activity with defendant Williams and of the complain-
      ant's reputation as a prostitute. The trial court decided that the
      evidence was not admissible, primarily on the ground that the
      defendants had not complied with the statutory requirement
      that they give notice that they proposed to offer such evidence
      within ten days after the arraignment. The Court of Appeals,
      N. J. Kaufman, P.J., and J. X. Theiler, J. (D. C. Riley, J.,
      dissenting), reversed the defendants' conviction, holding that
      the application of the statutory notice provision unconstitution-
      ally violated defendant Williams' right to confront and cross-
      examine the witnesses against him and that the other defen-
      dants should have been allowed to benefit from the admission
      of the evidence (Docket Nos. 78-1441, 78-1808, 78-1972, 78-2168).
      The people appeal.

      In opinions by Justice Williams, with Chief Justice Fitzgerald
      and Justices Coleman and Ryan concurring in the result, by

REFERENCES FOR POINTS IN HEADNOTES

[1-8] 65 Am Jur 2d, Rape §§ 65, 82-84, 86.
   Modern status of admissibility, in forcible rape prosecution, of
      complainant's prior sexual acts. 94 ALR3d 257.
[5] 81 Am Jur 2d, Witnesses § 572.
[8] Constitutionality of "rape shield" statute restricting use of evi-
      dence of victim's sexual experiences. 1 ALR4th 283.

Justice Kavanagh, and by Justice Levin, the Supreme Court *held:*

The trial court did not err in refusing to admit the proffered evidence, and the convictions of the defendants are reinstated.

Justice Williams wrote:

The evidence proffered by the defendants is not relevant on the facts of this case. The fact that sexual intercourse had taken place previously between the complainant and one of the defendants, without more, should not serve as substantive evidence that she would consent to a group sexual encounter or to impeach her credibility. Therefore, it is unnecessary to address constitutional issues which may arise in the future.

1. Before evidence of the victim's past sexual conduct with the defendant may be found to be admissible it must be found to be relevant to the defense of consent. There is little, if any, logic to the defendants' argument that because the complainant had voluntarily consented to sexual acts with defendant Williams in the past, she would more probably have consented not only to sexual acts with him, but to group intercourse with three other men in his company. The facts show no relevance between the excluded evidence and the issue of consent.

2. There is also no merit to the argument that the evidence is admissible to impeach the witness's credibility. The idea that unchaste women are especially prone to lying is antiquated and fatuous. The Michigan Rules of Evidence limit the use of evidence for impeachment of a witness's credibility to evidence of conduct and character bearing solely on the witness's truthfulness. Evidence that the complainant had sexual relations with defendant Williams in the past is unrelated to the issue of her truthfulness.

3. The defendants did not seek to establish at trial that the complainant consented to sexual intercourse with the defendants as an act of prostitution. The record is virtually devoid of any suggestion that the complainant was engaging in sexual intercourse with the defendants for money. Defendant Williams admitted, on cross-examination, that the first time the complainant asked him for money was after the acts of sexual intercourse took, place. Thus, it is unnecessary to decide whether a trial court could constitutionally exclude such evidence on the basis of the statute.

4. Any proffered evidence of the complainant's reputation for, or specific acts of, prostitution on the record in this case was not sufficiently probative to have been admitted on the issue of

consent. In fact, evidence that a complainant was a prostitute would be more probative that she would be reluctant to provide sexual service gratis to four men. Accordingly, there was no denial of the defendants' right of confrontation and cross-examination in foreclosing this irrelevant inquiry.

5. Even if the complainant had been convicted of accosting and soliciting, with which she was charged within six days of the crime charged here, that crime is a misdemeanor and it cannot seriously be contended that it involves theft, dishonesty or false statement; therefore she could not properly be impeached solely on the evidence of conviction of that crime. There is no logical relation between a complainant's reputation for prostitution and her credibility as a witness. The law should not recognize any necessary connection between a witness's veracity and her sexual immorality. Therefore, the defendants were not denied any right of confrontation by the exclusion of evidence of the complainant's specific acts of, or reputation for, prostitution.

Chief Justice Fitzgerald and Justices Coleman and Ryan concurred in the result reached by Justice Williams because the trial judge did not abuse his discretion in excluding the proffered evidence. They cited Michigan Rules of Evidence 401 and 403, dealing with relevant evidence and its exclusion.

Justice Kavanagh, concurring, would hold that a defendant's constitutional right to confront his accusers and to produce evidence in his own behalf is not infringed by the provision in the criminal sexual conduct statute which requires timely notice by a defendant of an intent to proffer evidence of prior sexual contact between a victim and the defendant. The notice requirement protects a victim's sexual past from exposure to public scrutiny prior to an *in camera* determination that evidence of that past is more probative than prejudicial, and promotes the legitimate state interest in encouraging victims to report criminal sexual conduct and assist in its prosecution.

The trial court's refusal to admit evidence of the victim's past sexual conduct with defendant Williams on the ground that the defendants failed to comply with the notice requirements was proper.

The judgment of the Court of Appeals is reversed and the defendants' convictions are reinstated.

Justice Levin agreed that the issue should be decided in accordance with Michigan Rules of Evidence 401 and 403, but would remand for a new trial. A trial judge cannot exercise his discretion under the rules to exclude relevant evidence without

conducting an evidentiary hearing on the issue, and there was no such hearing in this case.

1. The notice requirements of the rape shield statute apply only to evidence admissible under the statute. Defendant Williams' testimony of past sexual contact with the complainant is not "evidence" within the meaning of the statute. The statute does not contemplate the admission of evidence tending to show that the complainant is or was a prostitute, so the notice requirement does not apply to such evidence. The Rules of Evidence do not require notice where it is proposed to offer such evidence.

2. The proffered evidence is relevant. The jury might find the defendants' story more probable if it were admitted. Evidence need not make a conclusion probable in order to be relevant; it must only make the conclusion more probable than it would have been without the evidence.

95 Mich App 1; 289 NW2d 863 (1980) reversed.

OPINION BY WILLIAMS, J.

1. RAPE — EVIDENCE — ADMISSIBILITY — PRIOR SEXUAL CONDUCT.

*The fact that prior sexual intercourse took place between the complainant and the defendant in a prosecution for criminal sexual conduct does not, without more, serve as substantive evidence that the complainant would consent to sexual intercourse with the defendant and his three codefendants as a group (MCL 750.520j; MSA 28.788[10]).*

2. RAPE — WITNESSES — IMPEACHMENT — PRIOR SEXUAL CONDUCT.

*Evidence that a complainant in a prosecution for criminal sexual conduct had consented to sexual relations with one of the defendants in the past is not admissible to impeach the complainant's credibility because it is unrelated to her truthfulness as a witness (MCL 750.520j; MSA 28.788[10]; MRE 608).*

3. RAPE — EVIDENCE — ADMISSIBILITY — PRIOR SEXUAL CONDUCT.

*Evidence of a complainant's reputation for, or specific acts of, prostitution is not sufficiently probative of the complainant's consent to sexual intercourse with four defendants without payment to be admissible in a trial for criminal sexual conduct; the evidence, in fact, would be more probative that the complainant would be reluctant to provide such services without pay (MCL 750.520j; MSA 28.788[10]).*

4. RAPE — WITNESSES — IMPEACHMENT — CONVICTION OF CRIME.

*The complainant in a trial for criminal sexual conduct could not properly be impeached solely on evidence that she had been convicted of accosting and soliciting because that crime is a misdemeanor, and does not involve theft, dishonesty, or false statement (MCL 750.520j; MSA 28.788[10]; MRE 609).*

5. RAPE — WITNESSES — IMPEACHMENT — PRIOR SEXUAL CONDUCT.

*There is no necessary connection between a witness's veracity and her sexual immorality, and the complainant in a trial for criminal sexual conduct could not properly be impeached through evidence of her reputation for, or specific acts of, prostitution (MCL 750.520j; MSA 28.788[10]; MRE 608).*

OPINION BY KAVANAGH, J.

6. RAPE — EVIDENCE — PRIOR SEXUAL CONDUCT — NOTICE.

*The provision in the criminal sexual conduct statute which requires timely notice by a defendant of an intent to proffer evidence of prior sexual conduct between a victim and the defendant does not infringe on the defendant's constitutional right to confront his accusers and to produce evidence in his own behalf (MCL 750.520j[2]; MSA 28.788[10][2]).*

7. RAPE — EVIDENCE — PRIOR SEXUAL CONDUCT — NOTICE — ADMISSIBILITY.

*A trial court may refuse to admit evidence proffered by a defendant charged with criminal sexual conduct of the victim's sexual reputation or of specific instances of prior sexual contact between the victim and the defendant where the defendant fails to comply with the statutory notice requirement, the fact that the evidence is material to a fact at issue and is more probative than prejudicial notwithstanding (MCL 750.520j; MSA 28.788[10]).*

OPINION BY LEVIN, J.

8. RAPE — EVIDENCE — ADMISSIBILITY — PRIOR SEXUAL CONDUCT.

*The notice requirements of the rape shield statute apply only to the types of evidence admissible under the statute, and evidence that a complainant is or was a prostitute is not that type of evidence; where evidence that the complainant had past sexual contact with the defendant which tends to show that the complainant was a prostitute is relevant, and its probative value outweighs its potential for prejudice, it is admissible*

*without regard to the rape shield statute (MCL 750.520j; MSA 28.788[10]; MRE 401, 403).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Timothy C. Scallen,* Assistant Prosecuting Attorney, for the people.

*Charles H. Brown* for defendant Williams.

*Gerald M. Lorence* for defendant Anderson.

*Cynthia R. Goldfarb* for defendant Respress.

*Arthur H. Landau* for defendant Johnson.

WILLIAMS, J. *(for reversal).* Defendants in this case have called into question the constitutionality of Michigan's "rape shield" law, which is set forth in the margin below. MCL 750.520j; MSA 28.788(10) (also referred to hereinafter as § 520j).[1]

---

[1] The "rape shield" law was enacted as part of this state's modernization of its sexual assault laws. See 1974 PA 266, effective November 1, 1974, MCL 750.520a *et seq.;* MSA 28.788(1) *et seq.*

MCL 750.520j; MSA 28.788(10), in particular, provides:

"Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

"(a) Evidence of the victim's past sexual conduct with the actor.

"(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

"(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may

All four defendants herein were prosecuted on charges of first-degree criminal sexual conduct; all four defendants asserted at trial that the complainant had consented to the various acts of sexual intercourse with them as a group. In support of this defense the defendants sought to present evidence that the complainant had had prior sexual relations with one of them and that she had practiced prostitution in the past. The trial judge, however, precluded the admission of such evidence based on the defendants' failure to timely comply with the "rape shield" law's notice provision. Thus it is the defendants' contention to us on appeal that the "rape shield" law, at least as applied to the facts of this case, violates the defendants' right of effective cross-examination protected by the confrontation clause of the Sixth Amendment.[2]

Under the facts of this case we believe the trial judge reached the proper result in foreclosing inquiry, either through cross-examination of the complainant or the presentation of direct testimony, into any alleged past sexual relations of one of the defendants with the complainant or into

order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1)."

[2] The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

The right of cross-examination is derived from the Sixth Amendment's language guaranteeing the right of the accused to confront the witnesses against him. *Chambers v Mississippi,* 410 US 284, 295; 93 S Ct 1038; 35 L Ed 2d 297 (1973). The Sixth Amendment has been held applicable to the states. *Pointer v Texas,* 380 US 400, 405; 85 S Ct 1065; 13 L Ed 2d 923 (1965).

alleged specific instances of, or reputation for, prostitution on the part of the complainant. Without deciding whether § 520j embodies a mandatory preclusion sanction if its notice requirement is not met, or whether such a requirement can withstand constitutional scrutiny, we find that the evidence sought to be admitted was irrelevant in the context of this particular case to the asserted defense of consent. As such, it was properly excluded. MRE 402.

## I. FACTS

Complainant testified at trial that she met defendant Williams shortly after midnight on October 19, 1977, in the Moon Glow Lounge in the City of Detroit. According to complainant, she had a casual acquaintanceship with defendant Williams, both having lived in the same neighborhood and the complainant having had Williams' sister baby-sit for her daughter. After a short period of small talk in the bar during which complainant declined defendant Williams' offer to "go out and have some fun", defendant Williams grabbed one of complainant's arms, telling her to come with him, defendant Anderson grabbed the other arm, and then in the company of the other two defendants, one of whom she had observed with a knife in the bar, she was ushered from the bar. Once outside the bar, according to the complainant, she was ordered into a car and then, accompanied by all four defendants, driven to defendant Respress' house. It was here, pursuant to defendant Williams' instruction that complainant do as she was told if she didn't want to get hurt, that the defendants engaged in the various sexual acts of which they were convicted.

Defendant Williams was the only one of the four accused to take the stand. He testified that while in the Moon Glow bar he asked complainant if she wanted to have sexual intercourse with him. After giving an affirmative response the complainant voluntarily accompanied all four defendants to defendant Respress' house. Once inside, defendant Williams, at the request of defendants Respress and Anderson, asked complainant if she would have intercourse with all four defendants. According to defendant Williams, complainant "said it was okay, that she'd done it before". Thereafter complainant willingly engaged in sexual intercourse with all four defendants.

The procedural course of defendants' attempt to introduce the contested evidence is certainly not neat. It appears that it was the prosecutor who initiated inquiry into this matter on the first day of trial. In discussing preliminary matters prior to jury selection, the prosecutor informed the court that defense counsel had informed him of its intention to offer evidence of prior sexual relations between the complainant and one defendant. Counsel for defendant Williams acknowledged his intent to cross-examine the complainant about prior sexual activity with defendant Williams and to offer evidence on complainant's alleged past prostitution. Defense counsel attributed his lack of compliance with the notice provisions of § 520j to the prosecutor's failure to comply with a prior discovery order of the court. This rather informal motion to permit inquiry into these matters was joined in by counsel for the other defendants. At that time, however, the court chose to take the motion under advisement until defense counsel was to begin his cross-examination.

The court's initial ruling on this matter nonetheless came before cross-examination. In the opening statement of counsel for defendant Williams—and apparently contrary to specific trial court instructions on the matter—reference was made to prior sexual intercourse between defendant Williams and the complainant. After objection by the prosecutor and an *in camera* hearing between the court and counsel, the court ruled that "[n]o discussion regarding the sexual conduct of the defendant with the actor *[sic]* or in terms of prostitution will be admitted in this case". The primary basis of the trial court's ruling was the defendants' lack of compliance with the notice requirements of the "rape shield" law, although as to the alleged reputation of the complainant as a prostitute the trial court may also have read the statute as absolutely proscribing the admission of such evidence.

Prior to cross-examination of the complainant, counsel for defendant Williams and the prosecutor again argued to the trial court about the scope of cross-examination of the complainant. This argument was fueled by the fact that defense counsel had obtained a temporary "rap sheet" on the complainant indicating that she had been charged with accosting and soliciting within six days of the crimes for which the defendants were on trial. Defense counsel argued that the accosting and soliciting charge constituted newly discovered evidence under § 520j(2), thus permitting defendants to offer evidence relative to a pattern of prostitution by complainant. However, the trial court ruled that no new evidence or information had been discovered and that his prior ruling excluding inquiry into the contested matters would not be changed.

Following their jury trial, defendants Williams, Anderson, and Johnson were each convicted, under separate counts, of first-degree criminal sexual conduct. MCL 750.520b; MSA 28.788(2). Defendant Respress was convicted of two counts of first-degree criminal sexual conduct.

A divided Court of Appeals reversed and remanded for a new trial. 95 Mich App 1; 289 NW2d 863 (1980). The majority held the notice provision of § 520j unconstitutional when applied to preclude evidence of specific instances of sexual conduct between the complainant and one defendant. *Id.,* 11. The majority also ruled that the remaining defendants should have been allowed to benefit from the admission of this evidence. *Id.,* 11-12.

We granted leave to appeal and directed the parties to include among the issues to be briefed whether application of § 520j violated defendants' Sixth Amendment rights to confrontation and cross-examination. 408 Mich 959 (1980).

## II. DISCUSSION

Defendants assert on appeal to us that their Sixth Amendment rights to confrontation and cross-examination were violated by the trial court's preclusion of any inquiry into alleged prior sexual relations between defendant Williams and the complainant[3] and the alleged reputation of the complainant as a prostitute. This evidence, defendants argue, is relevant to their defense of consent

[3] Although § 520j(1)(a) speaks in terms of past sexual conduct between only the victim and actor, defendants Anderson, Johnson, and Respress insist that they are entitled to benefit from the introduction of evidence of past sexual relations between defendant Williams and the complainant. They point out that all four defendants have asserted the defense of consent and that the prosecutor opposed, and the trial court denied, their motions for separate trial.

and the closely related issue of complainant's credibility.

The trial court excluded the evidence primarily due to defendants' failure to comply with § 520j(2) which requires a defendant intending to offer evidence permitted under § 520j(1), subds (a) or (b) to file a written motion and offer of proof within ten days after the arraignment on the information. For the text see fn 1.

Were we confronted with a denial of defendants' rights to cross-examine the complainant on relevant probative matters, as well as a denial of their right to present relevant evidence on their own behalf, due solely to their failure to comply with a statutory notice provision, constitutional questions involving the Sixth Amendment might indeed be raised. *Cf. Williams v Florida,* 399 US 78, 83, fn 14; 90 S Ct 1893; 26 L Ed 2d 446 (1970) (issue of constitutionality of preclusion sanction of a notice-of-alibi rule not reached). However, we do not reach such questions in this case since we do not find defendants' proffered evidence, under the facts of this case, to be relevant evidence.

We proceed then to a consideration of the relevance of the excluded evidence with respect to the issues of consent and credibility.

*A. Prior Sexual Relations Between One of Four Defendants and the Complainant*

*1. Consent*

Defendants assert that the trial court denied their rights of confrontation and cross-examination by excluding evidence of prior sexual relations between defendant Williams and the complainant.

Such an assertion must rest on the premise that such evidence is probative of their claim that the complainant consented to have group sexual relations with all four of them, one after the other, with defendant Williams constantly present and the other defendants intermittently so.

We are unable to agree with defendants' premise. There seems to be little, if any, logic to the proposition that because the complainant might have voluntarily consented to sexual intercourse with defendant Williams in the past, in what we must assume in the absence of evidence to the contrary to have been an encounter between just the two of them, she would more probably have consented in this case to intercourse with not only defendant Williams again, but also group intercourse with three other men in his company. An analogous claim was made and rejected in *In the Interest of Lawrence D Nichols*, 2 Kan App 2d 431; 580 P2d 1370 (1978). There a juvenile defendant was found guilty of having assisted another person in the commission of rape. Specifically, the facts were that defendant, in the company of two other young men, went to the home of the complainant. There the defendant had sexual intercourse with the complainant and then, by force, he assisted his two companions in having intercourse with the complainant. The defendant sought to admit into evidence the fact that he and the complainant had been having sexual intercourse on a regular basis for several months and that they often had "rough" intercourse. However, the trial court, in applying the Kansas "rape shield" law, which is much broader than Michigan's and which specifically makes relevance the touchstone of admissibility, excluded such evidence. In addressing the defendant's contention that the trial court's ruling

had violated defendant's right to confrontation, the Kansas appellate court said:

"While it may be conceded that often the victim's prior conduct with the defendant would be relevant to the consent issue and therefore should be admitted under [Kan Stat Ann § ] 60-447a ["rape shield" law], it does not appear that the trial court abused its discretion in excluding the evidence under the special circumstances of this case. It must be remembered that the defendant arrived at the victim's trailer in the company of two friends. It does not appear that the trial court acted capriciously in determining that the defendant should not have presumed that her prior consensual activity with him alone would imply her consent to having intercourse with his friends, or even to having intercourse only with him, but in the presence of his friends.

"We can find no abuse of discretion in the trial court's ruling excluding the proffered evidence for purposes of defending against charges of rape ([Kan Stat Ann § ] 21-3502) and aiding and abetting another in the commission of a crime ([Kan Stat Ann § ] 21-3205). The judgment of guilty for the violation of [Kan Stat Ann § ] 21-3502 and [Kan Stat Ann § ] 21-3205 is therefore affirmed." *In re Nichols, supra,* 436.

We feel the fact of sexual intercourse between a complainant and a defendant alone should not, without more, serve as substantive evidence that the complainant would consent to any type of group sexual encounter. In short, the facts of this record present us with little or no logical relevance between the excluded prior sexual acts evidence and the issue of consent respecting either defendant Williams alone or the other three defendants collectively.

*2. Credibility*

In their briefs some of the defendants also seem

to be arguing to us that the excluded prior sexual act evidence should have been admitted on the issue of the complainant's credibility. It is unclear, however, whether or not the defendants mean simply that the prior sexual act evidence is relevant insofar as it tends to prove consent, thus tending to impugn the complainant's account of forced sexual intercourse. In such an event it is the complainant's veracity as to the particular instance in issue which is more properly being challenged than her overall credibility as a witness, although the distinction is admittedly fine. If this is the substance of the defendants' assertion that the prior sexual relations of defendant Williams with the complainant are relevant to complainant's credibility, we have held to the contrary in our immediately preceding discussion.

On the other hand, if the defendants are asserting that the prior sexual activity of the complainant with defendant Williams is admissible to impeach the complainant's general credibility as a witness, we likewise find no merit in such an argument. While it is true that prior sexual act conduct was used in the past by some courts to attack the credibility of a complaining witness in forcible sexual assault cases, Tanford & Bocchino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 U Pa L Rev 544, 549 (1980), the notion that unchaste women are especially prone to lying has become as antiquated and as fatuous as the belief that simply because a woman has consented to intercourse with a third party on another occasion, she probably consented to intercourse with the defendant. As the North Carolina Supreme Court has observed in discussing the subject of impeachment of credibility through sexual history evidence:

"Common sense dictates the unreasonableness of this attitude. If sexual experiences outside marriage render one woman less truthful than her virgin sister, then sexual experience outside marriage would be an issue at any trial where a woman was a witness. This is plainly not the case. A woman, just as a man, 'may be intemperate, incontinent, profane and addicted to many other vices that ruin the reputation, and yet retain a scrupulous regard for the truth. * * *' *Gilchrist v McKee,* 4 Watts 380, 386 (Pa, 1835), quoted in *Commonwealth v Crider,* 240 Pa Super 403, 406; 361 A2d 352, 354 (1976)." *State v Fortney,* 301 NC 31, 40; 269 SE2d 110, 115 (1980).

It is enough therefore to dispose of this matter that we point to MRE 608 and its limitation on evidence seeking to impeach a witness's credibility to character and conduct evidence bearing solely on the witness's truthfulness. See also *People v Bouchee,* 400 Mich 253, 268; 253 NW2d 626 (1977), a case preceding the adoption of present MRE 608. In *People v Bouchee,* we held that evidence of the illegitimacy of defendant Bouchee's four children was inadmissible impeachment evidence in a trial for assault with intent to commit rape because we found such evidence unrelated to the truthfulness or untruthfulness of the defendant or his wife as witnesses. Consistent reasoning dictates the conclusion that the proffered evidence that the present complainant had sexual relations with defendant Williams in the past is likewise unrelated to the particular character trait of truthfulness or untruthfulness.

### B. Evidence of Prostitution

#### 1. Consent

Defendants also maintain that the trial court denied their Sixth Amendment rights by foreclosing inquiry into evidence of the complainant's prostitution. Defendants' argument in this regard

is basically that evidence of complainant's prostitution is supportive of defendants' account of their group sexual encounters as consensual, although there is little or no evidence they were undertaken for pay.

Again, defendants do not clearly state exactly why they consider such evidence probative of consent. It seems that part of the claimed relevance is based on the defendants' belief that the complainant, to quote defendant Williams' brief, "in furtherance of this pattern of prostitution, willingly engaged in sexual relations with him [defendant Williams] in the past, and on the night in question". However, the record is virtually devoid of any suggestion that the complainant was engaging in sexual intercourse with the four defendants on the night in question for money. Defendant Williams, the only defendant to testify, stated on direct examination that while in the Moon Glow bar he simply asked the complainant to have sex with him.

"*Q. [By Mr. Brown, counsel for defendant Williams]:* Okay, and what did you say indicating that something was going to take place at your cousin's house?

"*A.* Well, I asked her [the complainant] did she, you know, want to engage in sex.

"*Q.* What was her response?

"*A.* She said, 'yes.' "

There is not the slightest hint here in defendant Williams' version of the events that the complainant expected financial recompense for any sexual services. Nor is any such expectation present in defendant Williams' account on direct examination of his solicitation of the complainant to have intercourse with the other defendants.

"*Q.* Okay. You had this conversation with the individuals you spoke of [defendants Respress and Anderson asked defendant Williams to ask the complainant if she would have intercourse with all four of them] in the kitchen and did you do anything as a result of that conversation?

"*A.* Yes, I went and sat down with Peaches [the complainant] and I asked her how she felt about having sex with all four of us.

"*Q.* You asked Peaches whether or not she would be willing to have sex with all four of you?

"*A.* Right.

"*Q.* What was her response?

"*A.* She said it was okay, that she'd done it before."

In fact, according to defendant Williams, the only talk of money between the complainant and any of the defendants occurred *after* the acts of sexual intercourse which form the subject matter of this case, as defendants Anderson and Williams were letting her out of the car after having taken her back to the City of Detroit. According to defendant Williams, as the complainant was leaving the car she asked for $15 or $20. However, defendant Williams admitted, on cross-examination, that that was the first time complainant had asked for any money.

"*Q.* [*By Mr. Hutting, Assistant Prosecutor*]: When you dropped her off at Selden and Second, when she got out of the car, that is the first time she asked for money, is that correct?

"*A.* Yes, sir.

"*Q.* And she asked for $15 or $20, is that correct?

"*A.* Yes, sir."

It is evident that defendants did not seek to establish at trial that the complainant consented to sexual intercourse with all four defendants as

an act of prostitution. Thus we need not decide whether upon a proper record supporting the defense of financially induced consent, a trial court could constitutionally exclude evidence of prior or past prostitution based on § 520j(2).

Defendants' argument that evidence of prostitution has probative value on the issue of consent depends on whether the bare fact that a complainant has engaged in intercourse for money has any tendency to make it more probable that such a complainant would consent to intercourse without financial arrangements. We believe that any proffered evidence of complainant's reputation for, or specific acts of, prostitution, on the record made below, was not sufficiently probative to have been admitted. Other courts have been faced with this same type of issue and have held as we do now. The reasoning for this ruling is coherently expressed in the following excerpt from an opinion of the Ohio Supreme Court.

"The key to assessing the probative value of the excluded evidence is its relevancy to the matters as proof of which it is offered. Appellants contend that evidence of complainant's reputation as a prostitute is relevant to the issue of consent, which was Ogletree's defense to the rape charge. The supposed relevancy here rests on an assumption that prior unchastity with other individuals indicates a likelihood of consent to the act in question with the defendant. While this premise may have had some validity in an earlier time, it seems quite unpersuasive in today's era of more fluid morals. * * *

"Assuming that instances might exist where prior sexual activity by the complainant with third parties is relevant, we are not presented with such a situation in the present application of [Ohio Rev Code Ann §] 2907.02(D) [Ohio's "rape shield" law]. Evidence that complainant had a reputation as a prostitute is not sufficiently probative of consent to outweigh the state's

legitimate interests in excluding the testimony, *at least where there is no suggestion in the record that financial arrangements were entered into for sexual activities in this instance." State v Gardner,* 59 Ohio St 2d 14, 18; 391 NE2d 337, 340-341 (1979) (emphasis supplied).

Accord, *Commonwealth v Joyce,* — Mass —, —; 415 NE2d 181, 187 (1981); *State v Quinn,* 121 Ariz 582, 585; 592 P2d 778, 781 (Ariz App, 1978) (ruling that evidence of victim's prior acts of prostitution is not admissible where defendant does not claim the defense of consent to an act of prostitution).

In fact, if anything, evidence that a complainant was a prostitute would seem more probative of the fact that she would be reluctant to provide sexual services to four men gratis. Accordingly, we find no denial of defendants' right of confrontation and cross-examination in foreclosing this proposed inquiry into irrelevant evidence.[4]

*2. Credibility*

Finally, defendants assert that the trial court denied their constitutional right to confront the complainant by not permitting them to impeach her credibility through evidence of her prostitution. This claim is of minimal merit and need not detain us long.

Initially, we note that even had the complainant been convicted of the charge of accosting and soliciting at the time this case went to trial—of which there is no record support—defendants could not have impeached her credibility due to this fact alone under MRE 609 since accosting and soliciting is a misdemeanor, MCL 750.448; MSA 28.703, and it cannot seriously be contended that accosting and soliciting involves "theft, dishonesty

[4] To the extent that *People v McLean,* 71 Mich 309, 312; 38 NW 917 (1888), is contra, we expressly overrule it.

or false statement". See Committee Note on MRE 609.[5]

As to defendants' endeavor to impeach the complainant's credibility through her alleged reputation as a prostitute, we stress again this Court's requirement that the impeaching evidence be related to the character trait of truthfulness or untruthfulness. As with prior sexual conduct evidence, we see no logical relation between a complainant's reputation for prostitution and the character trait of truthfulness or untruthfulness. The law should not recognize any necessary connection between a witness's veracity and her sexual immorality. *State ex rel Pope v Mohave Superior Court,* 113 Ariz 22, 26; 545 P2d 946, 950 (1976). We agree fully with the following observation from *Joyce, supra,* 415 NE2d 185.

"Nor is the fact that a woman engages in sex for hire relevant to the issue of her credibility. 'The rule is well established that the fact that a female witness is a prostitute or keeps a house of ill fame is not admissible to impeach her.' *Commonwealth v Vandenhecke,* 248 Mass 403, 404; 143 NE 337 (1924)."

The defendants were not denied any right of confrontation in being foreclosed from attempting

---

[5] 402 Mich cv. MRE 609, in relevant part, provides:

"Rule 609. Impeachment by Evidence of Conviction of Crime.

"(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if

"(1) the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or the crime involved theft, dishonesty or false statement, regardless of the punishment, and

"(2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination."

to impeach the credibility of the complainant due to her specific acts of, or reputation for, prostitution.

## III. CONCLUSION

In our opinion it would have been error under the facts of this case for the trial court to have admitted evidence that one of four defendants had past sexual relations with the complainant, and that the complainant was a prostitute. This is not to say, however, that evidence of a complainant's prior sexual behavior with a sole defendant or even one of several defendants, or her reputation as a prostitute can never be relevant to an issue presented at trial. Our decision today rests solely on the irrelevance in this particular case of the proffered evidence to the asserted defense of consent and to impeachment of the complainant's credibility. It is, therefore, unnecessary to address ourselves to constitutional questions which may arise in the future by the application of this state's "rape shield" law to different circumstances of enhanced probative value. Accordingly, we reverse the judgment of the Court of Appeals and reinstate defendants' convictions.

FITZGERALD, C.J., and COLEMAN and RYAN, JJ. I concur in the result reached by Justice WILLIAMS because I am persuaded that the trial judge did not abuse his discretion in excluding the proffered evidence of prior sexual acts with the defendant Williams and the complainant's reputation as a prostitute. See MRE 401 and 403.

KAVANAGH, J. We granted leave to consider whether "the application of MCL 750.520j; MSA

28.788(10) violate[d] defendants' Sixth Amendment rights to confrontation and cross-examination".

"The application of" the statute in this case was the trial judge's enforcement of the notice requirement thereof rather than the statute's absolute ban on such evidence which we considered in *People v Arenda*, 416 Mich 1; 330 NW2d 814 (1982), decided today.

We are satisfied the notice requirement does not violate defendants' constitutional rights, and therefore reverse the judgment of the Court of Appeals and reinstate defendants' convictions.

Defendants sought to enter reputation evidence of the victim as a prostitute and evidence of specific instances of prior sexual conduct between the victim and defendant Williams to establish consent. The trial court refused to admit the proffered evidence because defendants had failed to comply with the notice requirement of MCL 750.520j(2); MSA 28.788(10)(2). The Court of Appeals reversed, finding the notice provision unconstitutional.

"[T]he very nature of the evidence sought to be presented, *i.e.,* prior instances of sexual conduct between a complainant and a codefendant, is personal between the parties. As such, it does not involve a subject matter that requires further witnesses to develop. An *in camera* hearing will necessarily focus on a complainant's word against the word of a codefendant. Requiring notice in this situation, then, would serve no useful purpose." *People v Williams,* 95 Mich App 1, 10; 289 NW2d 863 (1980).

We disagree.

The notice requirement serves the purpose of ensuring that a victim's sexual past will not be exposed to public scrutiny without an *in camera*

determination that such evidence is more probative than prejudicial.

The state has a legitimate interest in encouraging victims to report criminal sexual conduct and to assist in prosecutions therefor. So long as efforts such as this statute to further this purpose do not infringe on a defendant's constitutional right to confront his accusers and produce evidence in his own behalf, they are permissible.

The procedural requirement of notice so that an *in camera* hearing may determine the appropriate action to serve both ends appears to us as proper and adequate.

We find no error in the trial court's ruling that the evidence proffered here was inadmissible because of the failure to observe the notice requirement.

The convictions should be reinstated.

LEVIN, J.

I

I agree with the plurality opinion that the issue should be decided in accordance with MRE 401 and 403, but would remand for a new trial. A judge cannot exercise the discretion confided to him by Rule 403 to exclude relevant evidence on the grounds of prejudice, confusion, or waste of time,[1] without conducting an evidentiary hearing focused on that question. No such hearing was held in this case.

[1] MRE 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

## II

Defendants' failure to give notice in accordance with the rape shield statute does not justify affirmance of their convictions:

The notice requirements of the rape shield statute are inapplicable to defendant Williams' testimony of past sexual contact with complainant because a defendant's testimony regarding past sexual contact with the complainant is not "evidence" which a defendant "proposes to offer" within the meaning of the statute. See *People v Merritt*, 396 Mich 67, 88; 238 NW2d 31 (1976).[2]

The statute does not contemplate the admission of evidence tending to show that a complainant is or was a prostitute. The notice requirements of the statute are by its terms applicable only to evidence admissible under the statute;[3] the statute thus does not provide for notice that evidence that a

[2] In *Merritt*, this Court construed the prior statute which permitted a trial court to exclude "evidence offered by [a] defendant" to establish an alibi or insanity, if the defendant did not comply with the statute's notice provision. MCL 768.21; MSA 28.1044. This Court held that the words "evidence offered" applied only to witnesses other than the defendant, and thus that the notice provision did not apply to defendant's own testimony.

[3] "(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

"(a) Evidence of the victim's past sexual conduct with the actor.

"(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

"(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the

complainant is or was a prostitute will be offered. The Rules of Evidence do not require notice where it is proposed to offer such evidence.[4]

The evidence of Williams' past sexual contact with the complainant and tending to show that she was a prostitute is relevant for reasons set forth below. If the probative value of such evidence outweighs the potential for prejudice, the evidence was admissible under the Rules of Evidence without regard to the rape shield statute.[5]

## III

The evidence of prior sexual contact between complainant and defendant Williams and evidence concerning her reputation as a prostitute is here relevant.

MRE 401 defines "relevant evidence" as:

"evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

---

evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1)." MCL 750.520j; MSA 28.788(10).

[4] Reasonable rules of evidence, see fn 5, would include provisions requiring notice so that an *in camera* hearing can be held before non-probative innuendo is introduced by a defendant's counsel.

[5] Rape shield laws are a legislative response, and hence a response of the political process, to the failure of courts throughout the land to correct an imbalance in the rules of evidence which made it difficult to prosecute the crime of rape. In now responding to this imbalance, this Court need not accept the legislative judgment. This Court is obliged to formulate reasonable rules of evidence that promote the truth-seeking process, are fair to both the defendant and the prosecution, and safeguard against abuse of complainants and other witnesses.

Some jurors would find it difficult to believe that a woman would agree to sexual intercourse with a man who approached her in a bar. Most jurors would find it incredible that a woman would agree to intercourse with four men in succession. Such behavior is likely to be considered most unusual and unlikely to occur voluntarily.

Jurors might thus find Williams' story more probable if it is shown that complainant previously had intercourse with him. Likewise jurors might regard it more believable that a woman would consent to sexual acts with four men in succession, if they heard evidence that complainant has had sexual intercourse with a number of men in succession on a professional basis.[6]

To be sure, a woman's willingness to have sexual intercourse with one man on one or more occasions does not prove or even make it probable that she will consent to intercourse with that man and three others on some later occasion. Nor, I agree, does evidence that a woman is a prostitute establish or make it probable that she would be willing to have sexual intercourse without compensation with four men.[7] But evidence need not make a conclusion probable in order to be relevant; it must only make the conclusion more probable than it would have been without the evidence.[8]

[6] See *People v Jenness,* 5 Mich 305, 323-324 (1858); *People v Der-Martzex,* 390 Mich 410, 412-415; 213 NW2d 97 (1973).

[7] Clearly, a defendant should not be permitted to impeach a complainant's credibility by showing she was a prostitute. That a woman is a prostitute has nothing to do with her credibility. Witnesses lie because they are under pressure and not because of their past histories.

[8] The question is not whether it is probable that a woman who consented in the past would consent again, but whether defendant's story is more probable if complainant has consented in the past than it would be if she has not consented in the past. Similarly, the question is not whether it is probable that a prostitute would consent

IV

Because the trial judge did not hold an *in camera* hearing or allow defense counsel to make an offer of proof, the judge had no opportunity to determine whether the danger of prejudice substantially outweighed the probative value of the proposed evidence. MRE 403. Accordingly, I would affirm the decision of the Court of Appeals and remand for a new trial.

RILEY, J., took no part in the decision of this case.

---

to sexual intercourse with four men in succession, but whether it is more probable that a prostitute would do this than a woman who is not a prostitute.