PEOPLE v STULL

Docket No. 60434. Submitted March 3, 1983, at Lansing.—Decided July 7, 1983. Leave to appeal applied for.

Trent L. Stull was convicted of first-degree criminal sexual conduct, Clinton Circuit Court, Timothy M. Green, J. Defendant appeals, alleging several errors. *Held:*

1. Evidence that the complainant had engaged in sexual activity with another a few hours after the alleged rape was properly excluded. Such evidence is not relevant either to establish consent or to impeach the complainant's credibility.

2. The trial court's instructions to the jury properly presented the issue of the defendant's forfeiture of bail and flight from the jurisdiction.

3. Testimony of a rape counselor that the complainant's actions were not inconsistent with those of a rape victim was properly admitted.

4. Nonconsent is not an element of the offense of first-degree criminal sexual conduct, and the trial court did not err by failing to instruct the jury on the issue. An instruction on consent is proper only in a case in which there is evidence of consent. No such evidence was presented in this case.

5. The question of the admission of hearsay evidence was not preserved for appeal.

Affirmed.

1. RAPE — SEXUAL ACTIVITY OF VICTIM.

The so-called rape-shield law bars, with two narrow exceptions,

REFERENCES FOR POINTS IN HEADNOTES

[1] 65 Am Jur 2d, Rape § 82.

Constitutionality of "rape shield" statute restricting use of evidence of victim's sexual experiences. 1 ALR4th 283.

Modern status of admissibility, in forcible rape prosecution, of complainant's general reputation for unchastity. 95 ALR3d 1181.

Modern status of admissibility, in forcible rape prosecution, of complainant's prior sexual acts. 94 ALR3d 257.

[2] 29 Am Jur 2d, Evidence § 285.

[3] 65 Am Jur 2d, Rape §§ 91, 108.

[4] 65 Am Jur 2d, Rape § 7.

[5] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

evidence of all sexual activity by the complainant that is not incident to the alleged rape (MCL 750.520j; MSA 28.788[10]).

2. CRIMINAL LAW — EVIDENCE — FORFEITURE OF BAIL.

Evidence that a defendant had forfeited bail, standing alone, is not admissible, but when coupled with the defendant's flight and subsequent arrest is admissible as showing that the defendant's conduct indicated consciousness of guilt.

3. RAPE — CONSENT — JURY INSTRUCTIONS.

A criminal jury instruction on consent in a rape case is appropriate only in a case where there is evidence of consent (CJI 20:1:03).

4. RAPE — CONSENT — NONCONSENT — ELEMENTS OF OFFENSE.

Nonconsent is not an element of the offense of first-degree criminal sexual conduct; although evidence of consent is admissible to show the lack of force or coercion, such consent is not an element, lack of which the people must prove (MCL 750.520b[1][d][ii]; MSA 28.788[2][1][d][ii]).

5. EVIDENCE — HEARSAY — PRESERVING QUESTION.

The issue of alleged error in the admission of hearsay testimony, without an objection at trial, is not preserved for appellate review absent manifest injustice.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Jon Newman,* Prosecuting Attorney, and *Charles D. Sherman,* Assistant Prosecuting Attorney, for the people.

*Sheldon Halpern,* for defendant on appeal.

Before: R. B. BURNS, P.J., and BRONSON and R. E. ROBINSON* JJ.

PER CURIAM. Defendant was convicted after a jury trial of first-degree criminal sexual conduct, MCL 750.520b(1)(e); MSA 28.788(2)(1)(e). Sentenced to 10 to 20 years imprisonment, defendant appeals as of right.

Complainant testified that she was hitchhiking

---

* Former circuit court judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

in Lansing at approximately 10:00 p.m. on October 21, 1979. She was picked up by defendant, who agreed to drive her to an apartment complex where she intended to visit a friend. When they arrived at the complex, defendant asked complainant if she wanted to spend some time with him and that it would be worth $50. Complainant refused and attempted to get out of the car; however, defendant grabbed her arm and pulled a knife from underneath the car seat. He drove her to a field and forced her to participate in sexual intercourse with him. Afterwards, defendant returned her to the apartment complex and again offered her $50, which she again refused.

Complainant testified that, after being dropped off, she went to a bar. A man, later identified a Jonathan Heglund, introduced himself to her. Complainant testified that she wanted someone to talk to. She gave Heglund her address and told him to come to her apartment after he was through working at the bar. Heglund came to her apartment at approximately 2:00 a.m. He stayed with her from the early morning hours of Monday, October 22, until Wednesday, October 24.

On the afternoon of October 22, complainant and a friend went to a Lansing crisis center called the Listening Ear where a counselor, Robin Slavin, suggested that complainant go to a hospital. She did so, was examined there, and a police investigation soon followed.

## I

*Did the trial court err in excluding evidence that complainant had sexual intercourse with a stranger several hours after the alleged rape?*

Defendant argues that evidence of sexual activ-

ity, approximately seven hours after the alleged rape, between complainant and a stranger whom she picked up in a bar is admissible (1) to support defendant's claim of consent, and (2) to impeach complainant's credibility.

The so-called rape-shield law, MCL 750.520j; MSA 28.788(10), so far as pertinent to this case provides:

> "(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> "(a) Evidence of the victim's past sexual conduct with the actor.
>
> "(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease."

Contrary to defendant's claim, this statute does not only bar evidence of complainant's sexual activity prior to the alleged rape. It bars, with two narrow exceptions, evidence of *all* sexual activity by the complainant not incident to the alleged rape.

As Justice COLEMAN in *People v Arenda,* 416 Mich 1; 330 NW2d 814 (1982), points out, the purpose of this legislation is to minimize the prior practice of trying the complainant for her character instead of the defendant for his conduct, and thereby confusing the factfinder with nonrelevant matters. Her language did not restrict the holding to prior instances of sexual activity.

*People v Williams,* 416 Mich 25; 330 NW2d 823

(1982), holds that evidence of such other sexual activity is not relevant to establish consent and is not relevant to impeach complainant's credibility as a witness inasmuch as evidence of a woman's chastity has nothing to do with her propensity for lying.

Defendant's attempt to show complainant's sexual generosity after the incident appears to be a bootstrapping operation designed to establish that if she was free with her gifts after the fact she must have been free with them before the fact. In other words, she was a woman of bad moral character. This reasoning runs head on into *Arenda* and *Williams, supra.*

The trial court properly excluded evidence of complainant's subsequent sexual activity.

II

*Did the trial court err in admitting evidence of defendant's flight from the jurisdiction?*

Defendant argues that the trial court's reference to his absconding after release on bond pending trial was more prejudicial than probative. *People v Cammarata,* 257 Mich 60, 74; 240 NW 14 (1932), held that, standing alone, evidence of bail forfeiture would not be admissible, but that when coupled with defendant's flight and arrest was admissible as showing defendant's conduct indicating consciousness of guilt.

In the present case the trial court admitted evidence of the absconding, flight and bail forfeiture with an instruction to the jury in the language of Michigan Criminal Jury Instruction 4:4:01 which made it clear that flight can result from other factors than guilt and that it is for the jury to determine what caused defendant to flee.

We find no error in the admission of such evidence.

## III

### *Did the trial court err in admitting opinion testimony of a rape counselor?*

Defendant's quarrel with the testimony of Robin Slavin, a rape counselor, is directed at what defendant suggests was her use as a "human lie detector" to give opinion testimony as to complainant's credibility. The only testimony by Slavin in this regard was her statement, based on her training and observations of complainant, that she saw nothing in complainant which was inconsistent with the profile of a rape victim. She did not, contrary to defendant's suggestions, express her opinion as to complainant's credibility or as to whether complainant had been raped. The opinion was admitted in response to an issue raised by defendant as to whether a rape victim would have acted as complainant did and its admission was proper. See *People v Wells,* 102 Mich App 558; 302 NW2d 232 (1980).

## IV

### *Did the trial court err in failing to instruct the jury that nonconsent was an element of rape?*

The committee's note to Michigan Criminal Jury Instruction 20:1:03, "Consent", indicates that consent is an affirmative defense and restricts the instruction to only those cases where there is evidence of consent. There is no evidence of consent in this case.

Assuming, however, that the case did present evidence of consent, nonconsent is not an element

of the offense and its inclusion is not required in a jury instruction delineating the elements of the offense of rape.

MCL 750.520b(1)(d)(ii); MSA 28.788(2)(1)(d)(ii) defines criminal sexual conduct in the first degree or rape:

"A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

\* \* \*

"(ii) The actor uses force or coercion to accomplish the sexual penetration."

Although consent is clearly admissible to show lack of force or coercion, *People v Khan,* 80 Mich App 605; 264 NW2d 360 (1978), it does not, under this statute, rise to the level of an element of the offense, lack of which the people must prove.

That the silence of the statute on the subject of nonconsent as an element of the offense was a calculated act of the Legislature becomes clear if we examine its June 27, 1974, analysis of the proposed statute (then Senate Bill 1207), of which the above is a portion, prior to its enactment:

"The Manner in Which the Bill Addresses Itself to the Problem:

\* \* \*

"5. Non-Consent: The bill eliminates the present requirement that the non-consent of the victim must be proved 'beyond a reasonable doubt' at the outset of a 'rape' trial.

"One 'Argument For' the bill, presented in the same analysis, stated:

"The question as to whether or not the victim 'consented' is not an issue in any felony other than rape. This bill would make the rape standard consistent with

the standard for other felonies by allowing the victim to assess rationally the danger of injury or death and conduct herself/himself accordingly. The protection from having to prove non-consent to rape is essential; in cases where the victim is mentally or physically helpless or surprised into non-resistance and therefore physically or mentally unable to convey non-consent."

Contrary to defendant's suggestion that *People v Hearn,* 100 Mich App 749; 300 NW2d 396 (1980), finds consent to be an element of the offense instead of a defense, the following quotation makes it clear that such is not the case:

"Certainly the Legislature, in eliminating the necessity of proof of non-consent by the prosecution, did not intend to preclude an accused from alleging consent as a defense to the charge." *Hearn, supra,* p 755.

Hearn's conviction was reversed because the trial judge failed to instruct the jury on defendant's claim of consent. Unlike Hearn, defendant Stull offered no proof of consent.

"The instruction to the jury * * * must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Reed,* 393 Mich 342, 349-350; 224 NW2d 867 (1975).

V

*Did the trial court err in admitting hearsay testimony that complainant said she was raped?*

Two prosecution witnesses testified, unresponsively, that complainant told them she had been raped. Defense counsel not only did not object to such testimony but did himself elicit hearsay statements to the effect that complainant had been

raped. In the absence of manifest injustice, the question of error in the admission of hearsay without objection is not preserved for review. *People v Martin,* 75 Mich App 6; 254 NW2d 628 (1977); *People v Hunt,* 68 Mich App 145; 242 NW2d 45 (1976); *People v Coppernol,* 59 Mich App 745; 229 NW2d 913 (1975); *People v Buero,* 59 Mich App 670; 229 NW2d 880 (1975).

Affirmed.