# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ANDREW ROBERT COFFMAN,

       Defendant-Appellant.

UNPUBLISHED
June 9, 2015

No. 321406
Ionia Circuit Court
LC No. 2013-015897-FH

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Defendant, Andrew Robert Coffman, appeals as of right his convictions and sentence, following a jury trial, of third-degree criminal sexual conduct (CSC III) (force or coercion), MCL 750.520d(1)(b). Coffman was also convicted of fourth-degree criminal sexual conduct (CSC IV) (force or coercion), MCL 750.520e(1)(b). The trial court sentenced Coffman to serve concurrent terms of 4 to 15 years' imprisonment for his CSC III conviction and one to two years' imprisonment for his CSC IV conviction. We affirm.

## I. FACTS

According to the victim, she and Coffman had a relationship for four years and had a son together, but their relationship ended in May or June of 2013. The victim lived in an apartment with Coffman, their son, and their roommate Tim Marrion. On August 10, 2013, the victim also invited Tony Jordan to the apartment.

According to the victim, she and Coffman left the apartment and went to Walmart and McDonald's. During the drive, Coffman repeatedly asked the victim to have sex with him, and the victim repeatedly declined. After they returned to the apartment, the victim sat on the couch and ate while Jordan and Marrion played video games.

Coffman approached the victim and began tickling her and fondling her breasts. Coffman then pulled the victim off the couch and pinned her into a corner, where he pulled off her tank top and bra and told Jordan to remove her shorts. Jordan refused, and Coffman pulled them off. As the victim attempted to change into a nightgown, Coffman shoved her into his bedroom and onto the bed. Coffman yelled for Jordan and Marrion to come into the bedroom, and told Jordan to help him to hold her down. Jordan testified that Coffman instructed him to lick the victim's vagina, but he refused.

-1-

The victim testified that during the assault, she was screaming for the men to "get off from [her] and leave [her alone]," but the men kept grabbing her breasts and trying to pull her legs apart. There were times at which she had no idea who was doing what to her, but she was certain that Coffman put his fingers in her vagina. Jordan testified that he knew that the victim wanted to leave, that the victim told Coffman to stop five or six times, and that the victim told Coffman to "get his fingers out of her private area." Marrion testified that he saw Coffman rubbing the victim's breasts and attempting to put his hands "[i]n her private part." According to Marrion, the victim repeatedly told Coffman and Jordan to stop.

Jonathan Miller testified that he was walking his dog in the early morning of August 11, 2013, when he heard a distressed female voice screaming "get out, get out." Billi Miller testified that she tried to determine where the screams were coming from, heard a woman screaming "get out" and "help," and called the police. Officer Randy Dankenbring testified that after he arrived at the victim's apartment, he heard a woman screaming "get out, get off me." Officer Dankenbring approached an apartment and knocked on the door, and Coffman and the victim answered. The victim testified that Coffman told her not to tell the officer that Jordan was in the apartment. Jordan testified that he hid in an apartment because he was on parole and it was past his curfew.

According to Officer Dankenbring, he asked if everything was fine and Coffman answered affirmatively. He interviewed Coffman, the victim, and Marrion, and the victim indicated that a sexual assault took place. He later interviewed Coffman at the police department, where he admitted that the victim repeatedly told him to stop but he did not. Jane Matthews, a sexual assault nurse examiner, testified that she examined the victim. According to Matthews, the victim indicated that she had pain in her hips, thighs, and genitals. Matthews examined the victim and found a bruise on her upper right thigh that was consistent with a fingertip bruise.

The jury found Coffman guilty of CSC III and CSC IV. Coffman now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992); *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). We must resolve any conflicts in the evidence in the prosecution's favor. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

The elements of CSC III are that the defendant sexually penetrated the victim and used force or coercion to accomplish the penetration. MCL 750.520d(1). MCL 750.520a(r) defines "sexual penetration" as including "sexual intercourse . . . or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of another person's body . . .

." Further, "identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

First, Coffman contends that there was insufficient evidence that he, rather than Jordan, penetrated the victim. We disagree.

A victim's testimony alone may be sufficient to convict a defendant of CSC. *People v Brantley*, 296 Mich App 546, 551; 823 NW2d 290 (2012); MCL 750.520h. Further, circumstantial evidence and reasonable inferences arising from that evidence can sufficiently prove the elements of a crime. See *Kanaan*, 278 Mich App at 622.

In this case, the victim testified that Coffman digitally penetrated her. While she agreed on cross-examination that the room was dark and she did not know for sure who had penetrated her, she also testified on redirect examination that she was certain that she saw Coffman put his fingers inside her vagina. Jordan testified that the victim screamed for Coffman to get his fingers out of her privates, and Marrion testified that he saw Coffman trying to put his hand in the victim's genitals. Viewing this evidence in the light most favorable to the prosecution and resolving conflicts in the prosecution's favor, we conclude that a rational trier of fact could have concluded beyond a reasonable doubt that it was Coffman who penetrated the victim.

Second, Coffman contends that the prosecution did not disprove his affirmative defense of consent. We disagree.

Consent is an affirmative defense to CSC if the prosecution's theory is based on force or coercion. *People v Waltonen*, 272 Mich App 678, 689; 728 NW2d 881 (2006). "A person consents to a sexual act by agreeing to it freely and willingly, without being forced or coerced." *Id*. at 689 n 4 (quotation marks and citation omitted). Proof of consent generally negates the element of force or coercion. *People v Khan*, 80 Mich App 605, 619 n 5; 264 NW2d 360 (1978). Consent is an affirmative defense; lack of consent is not an element of the crime. *People v Stull*, 127 Mich App 14, 20-21; 338 NW2d 403 (1983). Therefore, while the prosecution must prove force or coercion beyond a reasonable doubt, the defendant must prove consent by a preponderance of the evidence. See *People v Likine*, 492 Mich 367, 405 n 81; 823 NW2d 50 (2012) (holding that "[a]lthough the prosecution must prove the elements of the crime beyond a reasonable doubt, the defendant bears the burden of proving the affirmative defense by a preponderance of the evidence").

In this case, the victim testified that she repeatedly told Coffman to stop, but Coffman forced her into the bedroom and told Jordan to hold her down. Multiple witnesses also testified that they heard the victim screaming stop, including the Millers and Officer Dankenbring. Given this evidence, the prosecution proved force beyond a reasonable doubt, and Coffman failed to prove his affirmative defense of consent. We conclude that sufficient evidence supported the jury's verdict.

## III. OFFENSE VARIABLES

The proper interpretation and application of the sentencing guidelines is a question of law that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). We review the sentencing court's scoring of a sentencing guidelines variable for clear error.

*People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). A preponderance of the evidence must support the trial court's determinations. *Id*.

Coffman contends that the trial court erred when it assessed multiple offense variables (OVs), including OV 3, OV 4, OV 14, and OV 19. We disagree.

The trial court properly assesses five points for OV 3 when "[b]odily injury not requiring medical treatment occurred to a victim[.]" MCL 777.33(1)(e). A bodily injury is "anything the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). In this case, the victim complained of pain and a bruise. Both pain and bruising are evidence of physical damage. We conclude that a preponderance of the evidence supported the trial court's assessment.

The trial court properly assesses 10 points for OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1). Whether the victim actually sought medical treatment is not conclusive. MCL 777.34(2). The victim's statements that the offense disrupted the victim's life and caused the victim to have nightmares may support an assessment of 10 points. *People v Drohan*, 264 Mich App 77, 90; 689 NW2d 750 (2004). In this case, the victim testified that she is terrified, cannot trust men, and has anxiety attacks that require medication because of the offense. The victim also indicated in her impact statement that she has "terrible, horrible night[]mares," sleeplessness, and has lost her job because of anxiety. Thus, a preponderance of the evidence supported the trial court's assessment because there was evidence that the offense disrupted the victim's life.

The trial court properly assesses 10 points for OV 14 if "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). Leading includes directing or conducting other participants in the offense. *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014). Evidence that the defendant acted first, gave directions, or displayed greater initiative may show that a defendant was a leader. See *id*. Here, witnesses testified that Coffman initiated the assault by repeatedly grabbing the victim without her permission, and Coffman proceeded to direct other offenders when he instructed Jordan to hold the victim down and lick her. We conclude that a preponderance of the evidence supported the trial court's assessment under OV 14.

The trial court properly assesses 10 points for OV 19 if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice[.]" MCL 777.49. Interference includes interfering with police duties. *People v Barbee*, 470 Mich 283, 288; 681 NW2d 348 (2004). Further, lying to police officers constitutes interference with the administration of justice when it leads police investigators astray. *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010).

In this case, when officers arrived at the victim's apartment to investigate the offense, Coffman told the victim to lie about Jordan's presence and then told Officer Dankenbring that everything was fine inside the apartment. Coffman's statements could have misled the police from investigating the offense and did initially prevent police from discovering Jordan, who assisted Coffman in perpetrating the assault and could have contradicted his statement that

everything was fine.  Coffman's subjective reasons for doing so are not relevant.  We conclude that a preponderance of the evidence supported the trial court's assessment of 10 points under OV 19.

       We affirm.

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray