BATCHELDER, C.J., announced the judgment of the court and delivered an opinion, in which BOGGS, GIBBONS, SUTTON, COOK, McKEAGUE, and GRIFFIN, JJ., joined. SUTTON (p. 518), and GRIFFIN (pp. 518-20), JJ., delivered separate concurring opinions. MOORE, J. (pp. 520-24), in which COLE, J., joined, CLAY, J. (pp. 524-26), and WHITE, J. (pp. 526-27), delivered separate opinions concurring in the judgment only. MARTIN, J. (p. 527), delivered a separate dissenting opinion. KETHLEDGE, J. (pp. 527-39), also delivered a separate dissenting opinion, in which MARTIN, NORRIS, ROGERS, and STRANCH, JJ., joined.
OPINION
ALICE M. BATCHELDER, Chief Judge.
The respondent, Warden Raymond Booker, represented by the State of Michigan’s Attorney General and Solicitor General (hereinafter “the State”), appealed the district court’s grant of habeas corpus to petitioner-appellee Lewis Gagne. See Gagne v. Booker, No. 04-60283, 2007 WL 1975035, 2007 U.S. Dist. LEXIS 47616 (E.D.Mich. July 2, 2007). A three-judge panel affirmed. Gagne v. Booker, 596 F.3d 335 (6th Cir.2010), opinion amended and superseded by 606 F.3d 278 (6th Cir.2010). The State sought en banc rehearing, which we granted; we correspondingly vacated the panel opinion. Gagne v. Booker, No. 07-1970, 2010 U.S.App. LEXIS 15052 (6th Cir. July 20, 2010). We now REVERSE.
I.
In July 2000, Lewis Gagne and his friend Donald Swathwood (also his codefendant) had decided to move to California. Gagne was unemployed and his turbulent six-month relationship with his former-girlfriend, P.C., had ended approximately three weeks earlier. On the evening of July 3, 2000, Gagne, Swathwood, and another friend, David Stout, were out for a good time.
When their car ran out of gas, they walked to P.C.’s house and found her there. P.C., who had been drinking for most of the day, agreed to get cash from the ATM to buy gas, beer, and crack cocaine. Upon their return, and after smoking, drinking, and showering, P.C. began to have sex with Gagne, whereupon Swath-wood joined in. P.C. engaged in fellatio, vaginal intercourse, and anal intercourse with both men. She also engaged in fella *497 tio with Stout, albeit briefly, and during the course of this “escapade,” had multiple vibrators and a wine bottle inserted into her vagina and rectum. At approximately 5:00 a.m. the next morning, the three men took P.C.’s ATM card, withdrew $300, bought crack cocaine, and smoked it all themselves.
Later that afternoon, P.C. called the police and accused Gagne and Swathwood of rape. She claimed that, while she had originally begun a consensual sexual encounter with Gagne, she had protested Swathwood’s uninvited participation and, rather than relenting when she objected, Swathwood and Gagne had held her down, forcibly raped and sodomized her, mocked her and laughed at her, and tried to force her to perform fellatio on Stout, who was drunk, stoned, and virtually incoherent. Gagne and Swathwood replied that the whole episode was consensual; that P.C. had initiated and directed the “wild orgy” and had given them the ATM card with orders to return with more crack. They claimed that P.C. was the classic “woman scorned,” frustrated that Gagne was leaving for California and angry that the men had smoked the crack without her.
The State charged Gagne and Swath-wood with three counts each of first-degree criminal sexual misconduct in violation of Michigan law, M.C.L. § 750.520b(l)(f) (sexual penetration through use of force, causing injury to the victim). Both defendants entered not-guilty pleas, and the case was set for a jury trial in a Michigan state court. Stout was to be a witness, but not a defendant.
At the conclusion of a seven-day trial, the jury convicted Swathwood on all counts and Gagne on two (the jury acquitted Gagne of one count of forced fellatio). The court sentenced Swathwood to a prison term of 15 to 30 years, and Gagne to a term of 22]/z to 45 years.
II.
The present appeal stems from a pretrial ruling by a Michigan trial court on the admissibility of two particular pieces of evidence proffered by the two criminal defendants: an allegation that the alleged victim, P.C., and defendant Gagne had, on a certain prior occasion, engaged in group sex with another individual, one Ruben Bermudez; and a separate allegation that P.C. had, on a certain prior occasion, offered to engage in group sex with Gagne and his father. The defendants moved to admit this evidence pursuant to the Michigan Rape Shield Law, M.C.L. § 750.520j, but the trial court denied the motion and excluded the evidence (and any argument regarding it).
After conviction, the defendants appealed this decision to the Michigan Court of Appeals, arguing that the trial court’s exclusion of the evidence violated the Michigan Rape Shield Law in a manner that also violated their Sixth Amendment rights to a fair trial, to confront their accuser, and to present a complete defense. The Michigan Court of Appeals rejected this claim and affirmed the convictions. See Michigan v. Swathwood, Nos. 235540 & 235541, 2003 WL 1880143, 2003 MichApp. LEXIS 922 (Mich.Ct.App. Apr. 15, 2003).[1] Gagne sought leave to appeal to the Michigan Supreme Court, but was denied. Michigan v. Gagne, 469 Mich. 982, 673 N.W.2d 755 (2003).[2]
*498 After exhausting his state-court appeals, Gagne petitioned for habeas corpus relief in federal district court, claiming — among other things[3] — that the Michigan state courts had violated his Sixth Amendment rights to a fair trial by excluding the testimonial evidence about the group sex with Bermudez and the offer of group sex with his father. The district court granted the petition, see Gagne, 2007 WL 1975035, 2007 U.S. Dist. LEXIS 47616, and the State appealed.
Because Gagne’s argument on this issue has “evolved” over the course of the proceedings, it is worthwhile to track this claim from the beginning and review the arguments, counter-arguments, and decisions at each of the three prior stages: trial, state appellate, and federal habeas.
A.
Michigan’s Rape Shield Law, which lies at the origin of Gagne’s constitutional claim, is a rule of evidence particular to criminal sexual-misconduct cases and provides that:
(1) Evidence of specific instances of the victim’s sexual conduct, opinion evidence of the victim’s sexual conduct, and reputation evidence of the victim’s sexual conduct shall not be admitted under sections 520b to 520g [FN1] unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
(a) Evidence of the victim’s past sexual conduct with the actor.
(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.
(2) If the defendant proposes to offer evidence described in subsection (l)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (l)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).
[FN1] M.C.L.A. §§ 750.520b to 750.520g.
M.C.L. § 750.520j.
Prior to trial, Gagne identified certain items or instances concerning P.C.’s sexual history that he deemed relevant to his defense and filed a “Motion and Offer of Proof,” pursuant to § 750.520j(2), seeking to admit them as “proof of the victim [P.C.j’s past sexual conduct with him for the purpose of establishing consent.” Five of those items[4] were argued together:
*499 1. An allegation that P.C., Gagne, and Swathwood had, on a certain prior occasion in June 2000, engaged in group sex, which also included two other women they had met at a bar (i.e., “the Tony’s Lounge Incident”);
2. An allegation that P.C. and Gagne had, on a certain prior occasion in June 2000, engaged in group sex with another individual, one Ruben Bermudez;
3. An allegation that P.C. and Gagne, during their relationship, had commonly used “sex toys”, including vibrators, a wine bottle, and others;
4. An allegation that it was P.C. who had invited Stout (who was not charged as a defendant) to participate in the group sex on the night in question; and
5. An allegation that P.C. had, on a certain prior occasion, offered to engage in group sex with Gagne and his father, Rodney Gagne.
Gagne asserted that these “factual scenarios[,] constituting [his] offer of proof[,] [we]re probative of the issue of the alleged victim [P.CJ’s consent to have sexual relations with multiple partners simultaneously[>] and that the use of objects in connection with sexual activities is not necessarily inconsistent with the existence of consent on the part of the alleged victim [P.C.].”[5]
The State opposed the motion and the trial court ordered a hearing pursuant to § 750.520j(2) — though not in camera — “to determine whether the proposed evidence [wa]s admissible under [§ 750.520j] subsection (1).” ' See § 750.520j(2). At the hearing, the State conceded that the first item (the Tony’s Lounge Incident) fell within the subsection (1) exception because that past sexual conduct (i.e., that specific incident) involved the victim and these same two defendants, but argued for exclusion because its inflammatory or prejudicial nature outweighed its probative value. The State argued for exclusion of the third item (the sex toys) on the basis that the statute did not allow for such evidence, which the State characterized as “purely inflammatory.”
The State addressed the second and fifth items (i.e., the group sex with Bermudez and the offer of group sex with Gagne’s father) together, and argued against their admission:
[T]his evidence, Judge, is I believe totally prohibited by the statute. It is irrelevant. It is inflammatory. And basically what [the defendants are] doing is ... taking what is prohibited under many rules of evidence that we have, taking character evidence from which to infer conduct. In other words, [the defendants are] saying and alleging that these [two particular] prior invitations or activities ... of the victim’s willingness, if you will, to participate in sexual acts with multiple individuals therefore predisposes her to have consented [to] sexual activities with both of these defendants [Gagne and Swathwood]. That is prohibited by 404(A), the first sentence, 404(B), the first sentence, of the Michigan Rules of Evidence[6] as well as the *500 rape shield statute. It has nothing to do with sexual activity with these two gentlemen.
In discussing these items, the trial court expressed its concern that, “I just don’t have any case law on a situation where somebody other than the victim and the actor, being the defendant, participated in sexual activities,” to which Gagne’s counsel responded:
And ... maybe this will be the case. This is, to put it mildly, an unusual case, and I would only submit [that] to prohibit that evidence [of the group sex with Bermudez and the offer of group sex with Gagne’s father] from coming in because there is a third party involved would serve no purpose either under the rape shield statute and it certainly would, I think, violate my client’s [constitutional] right to confrontation [7] and right to establish evidence that goes toward the issue of consent.
At the trial court’s invitation, the State offered this response:
Yes, Judge. In relation to [the prior acts or offers of group sex], I would suggest, number one, that ... this is pure, unabashed character evidence and trying to show character and action in conformity therewith, which is prohibited by the first sentence of 404(A) and 404(B) of the Michigan Rules of Evidence.
Secondly, it is irrelevant to the question of whether the victim on the date in question consented to sexual activity with these two defendants together. And I agree with the [c]ourt, Judge, that, as I said, the presence of additional people other than the actors in this case shows that the evidence is not allowed under the [rape shield] statute, and again, Judge, it’s highly inflammatory. And in relation to [the Tony’s Lounge Incident], Judge, yes, the two actors are involved and if this [e]ourt finds that the balancing test weighs in favor of the admission for the defendants [then] in order for that balancing test really to work, I think this [c]ourt must preclude the information of the activities of other individuals because it takes it to inflammatory levels and it also has nothing to do with the victim’s consent [to the sexual activities, as described,] with these two individuals. Nothing further.
The trial court analyzed the items’ admissibility under the Rape Shield Law, M.C.L. § 750.520j, and did not address *501 Gagne’s constitutional claim (i.e., “right to confrontation”) or the State’s argument concerning Rule 404 of the Michigan Rules of Evidence.[8] The court explained:
As to 520j (a), evidence of a victim’s past sexual conduct with the actor, the [c]ourt believes that as to [the Tony’s Lounge Incident,] that that matter ought to be permitted to come to the jury’s attention. I don’t find that it is inflammatory or prejudicial in nature, and its probative value outweighs its possible prejudicial value.
As to [the sex toys], the [c]ourt will permit discussions with the victim, I take it on cross-examination of the victim by [Gagne’s counsel] and perhaps [Swathwood’s counsel], [The use of sex toys], it would appear to the [c]ourt, if true, it is not inflammatory or prejudicial to the extent that it outweighs its probative value.
As to the remainder of [Gagne’s] motion, [the group sex with Ruben Bermudez] doesn’t fit the statute, [the invitation to David Stout] doesn’t fit the statute, [another item] is withdrawn, [and the offer of group sex with Gagne’s father] doesn’t fit the statute. So none of those may be — inquiry may not be made about any of those; only [the Tony’s Lounge Incident and the sex toys].
The court granted Gagne’s “Motion and Offer of Proof’ in part, by admitting the first and third items (the Tony’s Lounge Incident and the use of sex toys), and formalized this decision in an order filed January 17, 2001. The court denied the second and fifth items (the group sex with Bermudez and the offer of group sex with Gagne’s father), along with some other proposed evidence. The court’s basis for excluding each of these items was that it “doesn’t fit the statute,” meaning that because an item involved a third party (i.e., another person), it would not satisfy the § 750.520j(l)(a) exception for “[e]vidence of the victim’s past sexual conduct with the actor.” The trial court initially excluded the fourth item (the invitation to Stout) based on a misunderstanding of its nature, but then clarified that it would allow that item, as it was limited to events on the night in question. That testimony was ultimately admitted during trial.
Gagne moved immediately for reconsideration, arguing as to the second and fifth items (the group sex with Bermudez and the offer of group sex with Gagne’s father) that Michigan case law, namely, Michigan v. Hackett, 421 Mich. 338, 365 N.W.2d 120 (1985), supported its admission. In Hackett, the Michigan Supreme Court said that “specific instances of [a] complainant’s past sexual conduct with third persons is ordinarily irrelevant and inadmissible to show consent,” but for “extraordinary circumstance.” Id. at 128. In a footnote to the “extraordinary circumstance” caveat, the Hackett court noted that “[s]exual history might ... be relevant where the victim has engaged in a prior pattern of behavior clearly similar to the conduct immediately in issue.” Id. at 128 n. 4 (quoting United States v. Kasto, 584 F.2d 268, 271 n. 2 (8th Cir.1978)). From this, Gagne argued for reconsideration and admission of these two *502 items because they “establish as clear a pattern as can be imagined which is similar to what is alleged here as non-consensual conduct.”
Gagne did not argue in his motion for reconsideration that the trial court had overlooked his constitutional right-to-confrontation claim, nor did he raise any other constitutional claim (e.g., fair-trial or complete-defense). The trial court denied the motion, finding no “palpable error” in its earlier decision and, thus, no basis upon which it could grant reconsideration.
B.
On direct appeal to the Michigan Court of Appeals, Gagne[9] challenged the trial court’s exclusion of the evidence regarding the group sex with Bermudez and the offer of group sex with Gagne’s father, claiming that the court had (1) misinterpreted the Rape Shield Law and (2) misapplied the Rape Shield Law in a way that violated his constitutional rights.
Gagne first argued that the trial court misinterpreted the Michigan Rape Shield Law, specifically the exception in § 750.520j(l)(a) that allows for the admission of “[e]vidence of the victim’s past sexual conduct with the actor,” by limiting its scope to just those incidents of “the victim’s past sexual activity with only the actor.” Even though others were involved or present — be it Swathwood, Bermudez, or Gagne’s father — each of the incidents in question included victim P.C. and defendant-actor Gagne and, therefore, satisfied the exception as written, i.e., “the victim’s past sexual conduct with the actor.” In Gagne’s view, by excluding incidents on the basis that others were present in addition to the defendant-actor, the trial court improperly “read into the statute a general exclusion of [evidence of past incidents of] group sexual activity.” Gagne argued that “[i]n the context of group sex involving the complainant, the defendant, and other parties, the presence of those other parties serves only to characterize the type of sex between the complainant and the defendant,” and the exception, § 750.520j(l)(a), “is not concerned with the type of sexual activity.” Or, as Gagne argued:
The rape-shield law is designed to prevent Mr. Gagne from making the argument that because [P.C.] had previously consented to sex with other men she must have consented to sex with him on the night in question. However, evidence that [P.C.] previously consented to group sex with Mr. Gagne is clearly relevant to the issue of whether she consented to group sex with Mr. Gagne on the night in question. The proposed evidence [would have] had the tendency to make the existence of consent more probable than it would [have been] without the evidence.
Obviously, this omits from consideration the identity of any other participant in the group sex and, instead, defines “group sex” as just a type of sex or sex act, such as vaginal sex, oral sex, anal sex, rough sex, exhibitionist sex, etc. That is, by this reasoning, “the presence of those other parties” does not describe or alter the victim’s perception of the “actor” (i.e., the victim’s chosen partner or partners), but merely describes the nature of the sexual conduct between them.[10]
*503 Gagne also argued that the trial court had misapplied the Michigan Rape Shield Law in violation of his “constitutional rights to a fair trial, to confront the complainant, and to present a [complete] defense.” Gagne cited Crane v. Kentucky, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), and Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), in support of this proposition, but also acknowledged that these rights are “not without limitation [and] may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process,” quoting Michigan v. Lucas, 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (editorial and quotation marks omitted) (quoting Rock v. Arkansas, 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).[11] Gagne then pointed the court to Michigan case law for the proposition that the State’s legitimate interest in limiting the admission of evidence must be “balanced against the fundamental requirements of the [Constitution,” Michigan v. Redmon, 112 Mich.App. 246, 315 N.W.2d 909, 914 (1982) (citing Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)), and argued that, while the State’s interest in its rape-shield law might be sufficiently compelling when the evidence is of minimal probative value, “[a]s to evidence of high probative value, ... no state interest can be compelling enough to preclude its introduction,” quoting Washington v. Hudlow, 99 Wash.2d 1, 659 P.2d 514, 523 (1983) (citing Redmon). Gagne insisted that testimony about group sex with Bermudez and the offer of group sex with Gagne’s father was highly probative:
The probative value of the proffered evidence to the issue of consent was especially weighty because of the nature of the sexual activity in question. The idea that a woman would have sex with two or more men at the same time strikes most people as bizarre and a jury, therefore, [would] be inclined to view a consent defense in a case like this one with inherent disbelief. The evidence of past consensual group sexual activity is relevant to show that the charged incident in question occurred consensually, as [the defendants] testified it did, rather than as [P.C.] stated.
To support his argument, Gagne analogized his case to three Michigan court cases, see Michigan v. Perkins, 424 Mich. 302, 379 N.W.2d 390 (1986); Michigan v. Williams, 416 Mich. 25, 330 N.W.2d 823 (1982); Michigan v. Zysk, 149 Mich.App. 452, 386 N.W.2d 213 (1986), and discussed two cases in which “[o]ther states have ... interpreted their own rape shield statutes to allow evidence of past consensual group sex activity that included the victim and defendant”; see South Dakota v. Blalack, 434 N.W.2d 55 (S.D.1988), and California v. Keith, 118 Cal.App.3d 973, 173 Ca.Rptr. 704 (1981). Gagne concluded his argument on his constitutional claim with this paragraph:
Given the remarkable similarity of the proposed evidence of past consensual group sex involving [P.C.] and Mr. *504 Gagne to the episode of group sex that [P.C.] alleged was non-consensual, the evidence at issue here was highly probative of the issue of her consent on the night in question. The probative nature of the evidence far outweighed its prejudicial effect and would have illuminated for the jury the nature of [P.CJ’s and Gagne’s sexual relationship. Because the proffered evidence was so probative on the issue of consent and because it was not overly prejudicial in any way that would implicate a compelling state interest, it should have been admitted to allow Lewis Gagne to confront [P.CJ’s testimony and to establish his defense.
Essentially, Gagne’s “constitutional” argument to the Michigan Court of Appeals was that the probative value of the evidence far outweighed its prejudicial effect.[12]
The Michigan Court of Appeals began its analysis by quoting the Rape Shield Law, M.C.L. § 750.520j(l), but acknowledged that “[i]n certain limited situations, evidence that does not come within the specific exceptions of the statute may be relevant and its admission required to preserve a criminal defendant’s Sixth Amendment right of confrontation.” Swathwood, 2003 WL 1880143, at *1. Consequently, the court looked to three cases from the Michigan Supreme Court: Michigan v. Arenda, 416 Mich. 1, 330 N.W.2d 814 (1982), Michigan v. Hackett, 421 Mich. 338, 365 N.W.2d 120 (1984), and Michigan v. Adair, 452 Mich. 473, 550 N.W.2d 505 (1996), all of which considered Sixth Amendment challenges to a trial court’s exclusion of evidence pursuant to the Michigan Rape Shield Law.
In Arenda, 330 N.W.2d at 815, the defendant was charged with “sexual assaults upon his eight-year-old son[ J during which the boy was made to perform acts of fellatio,” id. at 819 (Kavanagh, J., dissenting); see also Michigan v. Arenda, 97 Mich.App. 678, 296 N.W.2d 143, 145 (1980) (intermediate appellate court decision overruled on other grounds). The defendant “denied participating in the alleged acts of fellatio, claiming that he was not with his son when the acts occurred.” Arenda, 296 N.W.2d at 145. The prosecution’s case was founded solely on the eight-year-old victim’s uncorroborated testimony, but the persuasiveness of that testimony was enhanced considerably by the child’s ability to describe the sex acts in great detail. See Arenda, 330 N.W.2d at 817; id. at 820 (Kavanagh, J., dissenting) (“At trial, the prosecutor introduced evidence of prior sexual conduct between the victim and defendant to show that the ability of the youthful victim to explicitly describe fellatio was a result of having been forced by defendant to perform it.”). In response, the defendant sought to introduce evidence of the boy’s past, similar sexual conduct with others, to explain how this eight-year-old boy could “describe vividly and accurately the sexual acts that allegedly occurred.” Id. at 815. The defendant argued that this evidence was indispensable to his defense, as it was his only means of answering the question that the prosecutor had placed in the mind of every juror: How else could the child have come by such detailed knowledge? See id. The trial court excluded this evidence pursuant to the Rape Shield Law and, upon conviction, the defendant appealed. The Michigan Court of Appeals affirmed this part of the trial court’s decision succinctly, holding *505 that “information about the child’s alleged outside sexual encounters does not fall within either exception” to the Rape Shield Law. Arenda, 296 N.W.2d at 145. On appeal to the Michigan Supreme Court, the defendant claimed that the Rape Shield Law’s “prohibitions infringe[d] upon his Sixth Amendment right of confrontation.” Arenda, 330 N.W.2d at 815; see also id. at 821 (Kavanagh, J., dissenting). The dissent agreed with the defendant, arguing that the Rape Shield Law’s “categorical exclusion,” without proper consideration of context, of “evidence of a victim’s sexual conduct with persons other than the defendant,” was unconstitutional. Id. at 823 (Kavanagh, J., dissenting). The majority, however, found that defense counsel had cross-examined the victim about possible sexual contact with others (which the victim denied) and had failed to proffer evidence that the alleged prior acts had actually occurred. Id. at 818. The majority held that the Rape Shield Law was not unconstitutional on its face, id. at 815, and that “there [was] no basis on th[e] record for the conclusion that [the] defendant was denied the right of confrontation,” id. at 818. Therefore, the Michigan Supreme Court upheld the exclusion of the evidence.
In Hackett, 365 N.W.2d at 122-23, the Michigan Supreme Court considered the constitutionality of the Michigan Rape Shield Law in a consolidated appeal from two separate cases involving the trial courts’ exclusion of evidence of the victims’ prior sexual conduct, over the defendants’ protests that such exclusion violated their Sixth Amendment rights to confrontation and cross-examination. In the first sub-case, defendant Hackett, a black man incarcerated at a Michigan correctional facility, was charged with forcing the victim, a white male inmate, to submit to forced anal intercourse. Id. at 126-27; id. at 128-29 (Kavanagh, J., concurring); id. at 132 (Levin, J., dissenting). Hackett claimed consent and “sought to introduce specific instances of the complainant’s pri- or homosexual conduct with [other black] prisoners ... to circumvent the inference that it would be improbable that a white male prisoner would consent to sodomy by a black male prisoner.” Id. at 126.[13] The Michigan Court of Appeals reversed and vacated the conviction, holding that the exclusion of the victim’s sex-history evidence denied Hackett a fair trial. Id. at 130 (Kavanagh, J., concurring). In the other sub-case, defendant Paquette and his co-defendant were charged with forcing the victim — a married woman, five months pregnant, whom they had picked up on the highway after her car had run out of gas— to undress and “perform various sexual acts with them[,] by threatening to hurt her and her unborn baby.” Michigan v. Paquette, 114 MichApp. 773, 319 N.W.2d *506 390, 391 (1982); Hackett, 365 N.W.2d at 128; id. at 129 (Kavanagh, J., concurring); id. at 133 (Levin, J., dissenting). Paquette claimed consent and sought to introduce evidence that, on a night shortly before the incident, the victim had “allegedly met a man in a bar and left with him for consensual sexual relations in a motel.” Id. at 127.[14] The Michigan Court of Appeals affirmed the exclusion of the evidence and upheld the conviction. Paquette, 319 N.W.2d at 392.
On appeal to the Michigan Supreme Court, the prosecution argued that the Michigan Rape Shield Law compelled the court to exclude the evidence; the defendants argued that the Constitution compelled the court to admit it. Hackett, 365 N.W.2d at 122. The dissent argued that:
The procedures in the instant cases violated the defendants’ rights to confrontation and compulsory process and denied them fair trials and due process of law. In Hackett, the proffered evidence was relevant to rebut jury assumption and inference that a white man would not solicit or consent to an act of sodomy by a black man.... In Paquette, the evidence was relevant to rebut jury assumption and inference that a married, pregnant woman does not seek to engage in casual sexual relations.
Id. at 135-36 (Levin, J., dissenting) (paragraph breaks and footnote omitted). Specifically:
The defendants are properly concerned that the jurors will see the complaining witnesses as persons who are not likely to have consented to the sexual acts, not because they are chaste persons ... but because ... the charged sexual behavior is, in the jurors’ experience, ‘aberrant.’ It is ‘aberrant’ for a married, pregnant woman to be looking for casual sex and it is ‘aberrant’ for a white man to solicit or consent to a sexual relationship with a black man. At least that is what most jurors will think.
Id. at 135 (Levin, J., dissenting). But the majority was not persuaded. Concerning Hackett:
[A] closet ] question is presented where such evidence was sought to dispel the assumption that most jurors would believe such an act, especially given the interracial element, is not likely to occur voluntarily. Nevertheless, we do not believe [the] defendant was denied his constitutional right to confrontation since he had a reasonable opportunity to introduce evidence which would have permitted a discriminating appraisal of [the] complainant’s possible consent. Evidence of a specific instance of alleged homosexual conduct between complainant and a black male inmate occurring three days before the incident in question was brought out at trial as well as evidence of two stains of seminal fluid which may have been from more than one person. The defendant was not denied his right to confrontation since- he was given the opportunity, even though limited in fashion, to expose to the jury the complainant’s past homosexual encounter with a prisoner of the same race as defendant as tending to show his consent in this instance.
*507 Id. at 127. Concerning Paquette, the court concluded:
[T]here are no extraordinary circumstances disclosed in the record to take this case out of the general rule of inadmissibility. The fact that [the] complainant may have consented to sexual activity at some time in the past with a man other than the defendant, whom she met in a bar and accompanied to a motel, is not sufficiently similar to the facts at hand to be relevant to the issue of consent. Here, the simultaneous sexual acts between complainant and two strangers, one of whom was the defendant, occurred in the cab of a truck after the strangers had picked up the complainant on the road near her car which had run out of gas. Moreover, complainant’s alleged reputation for engaging in consensual sexual relations in the past, does not tend to prove that she did so with defendant at the time in question.
Id. at 128. Therefore, the Michigan Supreme Court rejected the proposition that the Sixth Amendment compelled the admission of evidence because, without it, the jury would likely view the particular sexual conduct as “aberrant” and assume that the victim would not consent to it.
In Adair, 550 N.W.2d at 507-08, the defendant was charged with sexually assaulting his wife by “digital-anal penetration,” and sought to introduce evidence that “digital-anal sexual activity was common practice in the couple’s marriage.” The trial court excluded this evidence and the Michigan Court of Appeals affirmed. Id. at 508. The Michigan Supreme Court characterized this evidence by “its highly prejudicial nature and its nonexistent probative value” and agreed that it was properly excluded. Id. at 518. But the dissent disagreed with the majority’s characterization:
[E]vidence of past consensual atypical sexual conduct is relevant to negat[e] the inferences jurors might draw, on their own initiative, absent such evidence, [such as] that the incident must have occurred as the complainant testified, because [a juror] could not have imagined such abnormal sexual conduct, or [a juror might imagine] that this abnormal sexual conduct is just the kind of hostile behavior an estranged husband would perpetrate on his wife to humiliate and subjugate her.
Id. at 513 n. 2 (Levin, J., dissenting).
Digital-anal sex may or may not be part of the sexual experience of one or more of the jurors who shall be empaneled to try this case. To the extent that it is, the evidence of past consensual digital-anal sex is less prejudicial; to the extent it is not, such evidence is more probative, especially for jurors who may have had little or no experience with digital-anal sex and who, on the basis of such inexperience, might regard digital-anal sex as deviant sexual behavior, and who might conclude — absent the evidence that the complainant and the defendant had consensually engaged on a number of occasions in such atypical sexual conduct — that a woman (the complainant) would not consent to such a penetration of her body.
Id. at 513-14 (Levin, J., dissenting). The majority was, apparently, not persuaded.
In the present case, the Michigan Court of Appeals framed Gagne’s argument thus: Gagne and Swathwood “argue that without this evidence that group sex was not foreign to [P.C.], the jury likely would reject a consent defense because the incident involved more than one partner.” Swath-wood, 2003 WL 1880143, at *2. The court rejected this argument, explaining:
[E]vidence of a victim’s prior sexual conduct with [a] defendant is only admissi *508 ble if and to the extent that the judge finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. [P.CJ’s willing participation in a threesome with Gagne and Bermudez is not probative of whether she consented to a threesome with Gagne and Swathwood on the night of the alleged offense. [T]he threesome involving Bermudez occurred while [P.C.] and Gagne were still dating. The instant offense occurred after they had ended their relationship and it involved Swathwood, not Bermudez. In light of the lack of similarity between the Bermudez threesome and the instant offense, we conclude that the trial court did not abuse its discretion in excluding the evidence.
Id. (quoting M.C.L. § 750.520j(l)) (quotation and editorial marks omitted; other citations omitted).
The Michigan Court of Appeals also rejected Gagne’s argument that the trial court erred by excluding testimony of P.C.’s “expressed desire to engage in group sex with Gagne and his father”:
Although the conduct involved defendant Gagne, like the evidence of the threesome with Bermudez, the evidence is not probative of whether [P.C.] consented in the instant matter to engage in sexual relations with Gagne and Swath-wood .... [T]he evidence was not relevant to the issue of consent, and ... the trial court did not abuse its discretion in excluding the evidence.
Moreover, in light of the other evidence of [P.CJ’s past sexual conduct that the trial court did admit, we reject [the] defendants’ argument that their [Sixth Amendment] rights of confrontátion compelled the admission of this evidence and take note of the evidence that the trial court did admit. The jury heard about ‘The Tony’s Lounge Incident,’ in which [the] defendants, [P.C.], and two other women engaged in group sex, according to [the] defendants’ version of the incident. [The] [defendants further testified that the incident included [P.C.] performing oral sex on Swath-wood. Even [P.C.] testified that[,] after The Tony’s Lounge Incident^] Gagne told her that she had engaged in oral sex with Swathwood, but she was unable to recall whether she had done so because she was intoxicated. Therefore, [the] defendants presented evidence that [P.C.] was not averse to group sexual activity.
Id. at *3. The Michigan Court of Appeals also rejected the several other claims, including prosecutorial misconduct and ineffective assistance, and affirmed the convictions and sentences.
Gagne sought leave to appeal to the Michigan Supreme Court, but was denied. Michigan v. Gagne, 469 Mich. 982, 673 N.W.2d 755 (2003). That exhausted his possible state remedies.
C.
On December 29, 2004, Gagne filed an eight-page, pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. Gagne raised three claims he had raised in the state courts — improper exclusion of evidence, prosecutorial misconduct, and ineffective assistance of counsel — and appended a copy of the brief his counsel had filed in the Michigan Court of Appeals as the brief in support of his habeas petition.[15] The State responded *509 that the first aspect of the improper-exclusion-of-evidence claim — that the Michigan Court of Appeals had misinterpreted the Michigan Rape Shield Law — was a state-law issue and, therefore, not cognizable on federal habeas. The State addressed the constitutional aspect of the improper-exclusion-of-evidence claim by pointing out that a criminal defendant’s right to present evidence is not unlimited, and argued that the Michigan courts had been correct to conclude that P.C.’s past sexual acts with others was “legally irrelevant” to her accusation of Gagne, such that the Sixth Amendment was not even implicated.[16]
The district court began its analysis by acknowledging that the Antiterrorism and Effective Death Penalty Act (AEDPA) applies in this case and, under AEDPA, a federal court may not grant a writ unless the state court’s decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,” or “was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding.” Gagne v. Booker, No. 04-60283, 2007 WL 1975035, at *3, 2007 U.S. Dist. LEXIS 47616 (E.D.Mich. July 2,2007) (quoting 28 U.S.C. § 2254(d)(l)-(2)). The district court then explained what is meant by “contrary to” and “unreasonable application of’ clearly established federal law. Id. And the district court expressly declined to consider Gagne’s claim that the Michigan Court of Appeals had misinterpreted the Michigan Rape Shield Law because that state-law claim was not cognizable on federal habeas review. Id. at *5 (“Whether the state courts correctly applied their own rape shield law is, by itself, of no concern to a federal habeas court.” (citation omitted)).
The district court granted the writ based on Gagne’s claim that, by excluding the testimony regarding the group sex with Bermudez and the offer of group sex with his father, the Michigan Court of Appeals had violated his Sixth Amendment rights to a fair trial, to confront the witnesses against him, and to present a complete defense. Id. at *5-9. Despite the district court’s acknowledgment of AED-PA’s application and the AEDPA standard, it is far from clear from the opinion just what “clearly established federal law” the court was referring to or relying on, or exactly how the Michigan Court of Appeals had contradicted or unreasonably applied it. See id. The district court apparently considered circuit and district court cases to be representative of “clearly established Supreme Court precedent”; more importantly, the district court conducted a plenary review. See id. The district court’s concluding paragraph on this issue is representative of its overall analysis:
The [c]ourt concludes that [Gagnej’s right to a fair trial and his right to present a full and meaningful defense were violated by his inability to introduce additional facts about [P.C.j’s conduct. The omitted evidence might have created a reasonable doubt that did not otherwise exist, and it might have altered the jury’s impression of [P.C.j’s *510 credibility. Therefore, the state court’s decision resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law. Well-established constitutional principles required the trial court to balance the State’s interest in excluding evidence against [GagneJ’s right to present a defense and to establish his innocence. Johnson v. Moore, 472 F.Supp.2d 1344, 1363 (M.D.Fla.2007). The Constitution also required the trial court, if [Gagne]’s interest were greater, to receive testimony notwithstanding the [Michigan Rape Shield Law]. Id.
Id. at *9. In this one paragraph, the district court offers its own opinion on the value of the withheld evidence, fails to state any authority for its assertion of “clearly established federal law,” and relies (twice) on a Florida District Court case for its concluding propositions of law.
To be sure, the district court did cite seven Supreme Court cases. The district court cited Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), for the basic proposition that “the right to confront and cross-examine witnesses and to call one’s own witnesses is fundamental to a defendant’s due process rights.” Gagne, 2007 WL 1975035, at *5. Similarly, the district court cited Holmes v. South Carolina, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)), for this unremarkable principle: “the Constitution guarantees criminal defendants ‘a meaningful opportunity to present a complete defense.’” See id. at *5. Notably, the Supreme Court issued Holmes on May 1, 2006 — over three full years after the Michigan Court of Appeals decided Gagne’s appeal on April 15, 2003 — and this parenthetical citation to Crane’s quote-within-the-quote is the only reference to Crane anywhere in the district court’s opinion. The district court quoted Pennsylvania v. Ritchie, 480 U.S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), in stating its proposition that “[t]he [Sixth] Amendment provides a criminal defendant with ‘the right physically to face those who testify against him, and the right to conduct cross-examination,’ ” and Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931), for the proposition that “a trial court abuses its discretion when it completely bars exploration of a relevant subject on cross-examination.” Id. at *6. The district court cited Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), for the harmless-error standard, id., and Olden v. Kentucky, 488 U.S. 227, 232-33, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), as an example of a case in which a defendant, accused of rape, was entitled to introduce certain evidence concerning his accuser’s sexual history, despite the rape-shield law, because that evidence would have supported the accuser’s motive to lie and “might have altered the jurors’ impression of the [accused’s credibility.” Id. at *8. But these seven citations pale in comparison to the citations to, expositions of, and reliance on the numerous circuit court cases.
As evidenced by the forgoing propositions and corresponding Supreme Court citations, the district court’s opinion contains no explanation of how the Michigan Court of Appeals contradicted or unreasonably applied clearly established Supreme Court precedent in Gagne’s case, or just what that precedent was. Also missing from the district court’s version of the “clearly established law” is any recognition that the defendant’s Sixth Amendment rights are not absolute. See Lucas, 500 U.S. at 152-53, 111 S.Ct. 1743 (considering Michigan’s Rape Shield Statute under a prior constitutional challenge); Taylor v. Illinois, 484 U.S. 400, 410-11, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (noting that the *511 Sixth Amendment Compulsory Process Clause does not grant defendants the unfettered right to offer testimony); Chambers, 410 U.S. at 295, 93 S.Ct. 1038 (clarifying that a defendant’s right to confront and cross-examine witnesses may have to “bow to accommodate other legitimate interests in the criminal trial process”).
D.
The State appealed the district court’s grant of the writ, arguing that the evidence was only minimally relevant and would have been cumulative because the trial court had admitted evidence of P.C.’s prior participation in group sex with Gagne and Swathwood when it admitted the testimony about the Tony’s Lounge Incident. Therefore, argued the State, the Michigan courts had properly excluded the other evidence of group sex (with Bermudez and Gagne’s father) and, even if they erred by excluding it, any error was harmless in light of the evidence that was admitted.
In his brief, Gagne did as the district court had done and relied primarily on circuit and district court cases. Gagne omitted any AEDPA analysis — he did not specifically identify any controlling Supreme Court precedent, nor did he specify how the Michigan Court of Appeals had contradicted or unreasonably applied any such precedent. One passage is particularly noteworthy:
By depriving Lewis Gagne of his ability to present relevant and material evidence directly bearing on his consent defense, the [Michigan state] trial court violated his Due Process right to a fair trial. Crane v. Kentucky, 476 U.S. 683, 690-91, 106 S.Ct. 2142, 2146-47 [90 L.Ed.2d 636] (1986), and cases cited therein. See also Johnson v. Moore, supra, 472 F.Supp.2d at 1356-60 (right to present complete defense is clearly established in United States Supreme Court decisions).
Appellee Br. at 23 (Dec. 17, 2008). This was Gagne’s only citation to Crane anywhere in his brief.[17]
A Sixth Circuit panel affirmed the district court, holding that “the exclusion of evidence ... was an unreasonable application of the principles set forth by the Supreme Court in Crane.” See Gagne v. Booker, 606 F.3d 278, 288-89 (6th Cir.2010).[18] The State sought en banc rehearing, which we granted. In its brief to the en banc court, the State argued that “[t]here is no clearly established Supreme Court law that required the Michigan courts to admit the excluded evidence on constitutional grounds,” inasmuch as “[t]he decision in Crane v. Kentucky involved claims very different in character to those presented here.” Appellant Br. at 2 (Aug. 19, 2010) (footnote omitted). Gagne responded that “Lucas and Crane converge to provide the principle under which the district court and the panel granted ... habeas relief.” Appellee Br. at 6 (Sept. 20, 2010).
III.
Because Gagne filed his habeas petition in December 2004, we apply the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214, codified at 28 U.S.C. § 2254 et al. Under AEDPA, we review the last state court decision adjudicated on the merits, to determine whether that decision “was contrary to, or involved an unreason *512 able application of, clearly established Federal law, as determined by the Supreme Court of the United States,” or “was based on an unreasonable determination of the facts.” 28 U.S.C. § 2254(d)(1)-(2).
Gagne claims that the Michigan Court of Appeals unreasonably applied the principles announced in Michigan v. Lucas, 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), and Crane v. Kentucky, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). Gagne does not claim that the decision was contrary to the fact-specific outcomes in either of those cases (or any others), nor does he allege any unreasonable determination of fact.[19]
A.
A state court “unreasonably applies” clearly established law when its rul *513 ing is “so lacking in justification that [the] error [is] well understood and comprehended in existing law[,] beyond any possibility for fairminded disagreement.” Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011); see also Williams v. Taylor, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (“objectively unreasonable”).
Importantly, “an unreasonable application of federal law is different from an incorrect application of federal law ... [and] [t]his distinction creates a substantially higher threshold for obtaining relief than [would] de novo review.” Renico v. Lett, 559 U.S. -, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (quotation marks omitted). In fact, “[i]t is not necessary ... to decide whether the [state court]’s decision — or, for that matter, the trial judge’s [decision] — was right or wrong.... [W]hether the trial judge was right or wrong is not the pertinent question under AEDPA.” Id. at 1865 n. 3. And the possibility that the federal habeas court might “conclude[] in its independent judgment that the [state court] applied clearly established federal law erroneously or incorrectly” is wholly irrelevant. See Williams, 529 U.S. at 411, 120 S.Ct. 1495. “[E]ven a strong case for relief does not mean the state court’s contrary conclusion was un *514 reasonable.” Harrington, 131 S.Ct. at 786.
Because “[a] federal court’s collateral review of a state-court decision must be consistent with the respect due state courts in our federal system,” Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), “AED-PA ... imposes a highly deferential standard [on the federal courts] for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt,” Renico, 130 S.Ct. at 1862 (quotation marks omitted). Even in the case of a summary denial, when the state court has not fully explained the rationale for its decision, the reviewing “habeas court must determine what arguments or theories could have supported the state court’s decision; and then it must ask whether it is possible [that] fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision.” Cullen v. Pinholster, 563 U.S. -, 131 S.Ct. 1388, 1402, 179 L.Ed.2d 557 (2011) (quotation marks and editorial marks omitted).
 Moreover, “[e]valuating whether a rule application was unreasonable requires considering the rule’s specificity.” Harrington, 131 S.Ct. at 786. “The more general the rule at issue — and thus the greater the potential for reasoned disagreement among fair-minded judges — the more leeway state courts have in reaching outcomes in case-by-case determinations.” Renico, 130 S.Ct. at 1864 (editorial and quotation marks omitted). “[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.” Harrington, 131 S.Ct. at 786 (quoting Knowles v. Mirzayance, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009) (quotation marks omitted)).
“If this standard is difficult to meet, that is because it was meant to be.” Harrington, 131 S.Ct. at 786. Indeed, “[s]ection 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.” Id. (quotation marks and citation omitted; emphasis added).
B.
Gagne contends that the Michigan Court of Appeals unreasonably applied the principles clearly established in Lucas and Crane when it affirmed the trial court’s exclusion of the testimony and questioning about the alleged group sex with Bermudez and the alleged offer of group sex with Gagne’s father. Lucas, 500 U.S. at 152-53, 111 S.Ct. 1743, stands for the proposition that the trial court must balance a state’s interest in excluding certain evidence under the rape shield statute against a defendant’s constitutionally protected interest in admitting that evidence, on a case-by-case basis — neither interest is superior per se. And Crane, 476 U.S. at 690-91, 106 S.Ct. 2142, stands for the general proposition that “the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense” — such that the court may not “exclude competent, reliable evidence ... central to the defendant’s claim of innoeenee[,] ... [i]n the absence of any valid state justification.”
The Michigan Court of Appeals did not cite Lucas or Crane by name, but identified the governing principles nonetheless, stating: “Application of the rape-shield statute must be done on a case-by-ease basis, and the balance between the rights *515 of the victim and the defendant must be weighed anew in each case.” Swathwood, 2003 WL 1880143, at *1. Moreover, “[i]n certain limited situations, evidence that does not come within the specific exceptions of the [rape-shield] statute may be relevant and its admission required to preserve a criminal defendant’s Sixth Amendment right of confrontation.” Id. And, “[i]n exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant’s sexual conduct where its exclusion would not unconstitutionally abridge the defendant’s right to confrontation.” Id. (quotation marks omitted).
The Michigan Court of Appeals then analyzed this particular evidence by weighing its probative value against its prejudicial effect, and the State’s interest against the defendant’s:
The rape-shield statute generally precludes admission of evidence of a victim’s past sexual conduct with others, while excepting instances of a victim’s past sexual conduct with the defendant to the extent it is relevant and not unfairly [ jprejudicial. In this case, the prior sexual conduct in question involves both ‘others’, (i.e., Ruben Bermudez) and defendant Gagne. Defendants argue that the complainant’s prior consensual participation in a threesome with Gagne tends to show that the complainant is not averse to such conduct, which is probative of whether she consented in the instant case. The trial court was concerned that although the threesome was indeed prior sexual conduct with defendant, it also involved a nonactor, Bermudez. Defendants argue that the fact that the complainant’s and Gagne’s sexual history included another person was merely an aspect or characteristic of their sexual relationship. Defendants argue that without this evidence that group sex was not foreign to the complainant, the jury likely would reject a consent defense because the incident involved more than one partner.
We disagree. Even viewing the evidence as defendants urge, as merely an instance of prior sexual conduct with defendant, an aspect of which was the inclusion of other persons, the evidence is not automatically admissible. Rather, evidence of a victim’s prior sexual conduct with defendant is only admissible if and to the extent that the judge finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. Here, the complainant’s willing participation in a threesome with Gagne and Bermudez is not probative of whether she consented to a threesome with Gagne and Swath-wood on the night of the alleged offense. Notably, the threesome involving Bermudez occurred while the complainant and Gagne were still dating. The instant offense occurred after they had ended their relationship, and it involved Swathwood, not Bermudez. In light of the lack of similarity between the Bermudez threesome and the instant offense, we conclude that the trial court did not abuse its discretion in excluding the evidence.
Defendants also argue that the trial court erred in excluding evidence that the complainant invited Gagne and his father to participate in a threesome. We disagree.
The evidence that the complainant expressed a desire to have a threesome with Gagne and his father is a statement that may also be conduct----Although the conduct involved defendant Gagne, like the evidence of the threesome with Bermudez, the evidence is not probative *516 of whether the complainant consented in the instant matter to engage in sexual relations with Gagne and Swath-wood .... We conclude that the evidence was not relevant to the issue of consent, and that the trial court did not abuse its discretion in excluding the evidence.
Moreover, in light of the other evidence of the complainant’s past sexual conduct that the trial court did admit, we reject defendants’ argument that their rights of confrontation compelled the admission of this evidence and take note of the evidence that the trial court did admit. The jury heard about ‘The Tony’s Lounge Incident,’ in which defendants, the complainant, and two other women engaged in group sex, according to defendants’ version of the incident. Defendants further testified that the incident included the complainant performing oral sex on Swathwood. Even the complainant testified that after The Tony’s Lounge Incident Gagne told her that she had engaged in oral sex with Swathwood, but she was unable to recall whether she had done so because she was intoxicated. Therefore, defendants presented evidence that the complainant was not averse to group sexual activity.
Swathwood, 2008 WL 1880148, at *2-3 (quotation marks and citations omitted).
The Michigan Court of Appeals therefore decided that neither the evidence of group sex with Bermudez nor the offer of group sex with Gagne’s father was probative of P.C.’s consent on the night in question because the third participant was different (Swathwood rather than Bermudez or Gagne’s father) and the surrounding circumstances were different (i.e., “the threesome involving Bermudez occurred while [P.C.] and Gagne were still dating[, whereas] [t]he instant offense occurred after they had ended their relationship”). Furthermore, the jury did hear evidence of P.C.’s participation in group sex with Gagne and Swathwood during the Tony’s Lounge Incident.
The Michigan Court of Appeals accepted that the State has a legitimate interest under its Rape Shield Law in excluding evidence, and considered the probity of the evidence as a measure of Gagne’s interest in admitting it. The United States Supreme Court has never held that rape-shield statutes do not represent a legitimate state interest, nor has it ever held that highly probative evidence will necessarily outweigh that interest. Quite to the contrary, the Court held in Lucas, 500 U.S. at 152-53, 111 S.Ct. 1743, that the trial court must balance the state’s interest against the defendant’s interest on a case-by-case basis, and neither interest is superior per se. And the Court concluded in Crane, 476 U.S. at 690, 106 S.Ct. 2142, that a trial court may even “exclude competent, reliable evidence ... central to the defendant’s claim of innocence,” so long as there exists a “valid state justification.” The Michigan Court of Appeals properly weighed the competing interests, as Supreme Court precedent requires, and did not misidentify or misapply any clearly established federal law.
C.
Gagne argues here — as he argued to the Michigan Court of Appeals[20] — that evidence of group sex with Bermudez and the offer of group sex with Gagne’s father was not merely competent, reliable, and central *517 to his claim of innocence, but was the “most relevant piece of evidence”:
[T]he excluded evidence was the most relevant piece of evidence. It was critical for the defense to show that [P.C.] was willing to engage in sex with Mr. Gagne and another person at the same time. Without such a showing, the jury undoubtedly viewed Mr. Gagne’s claim that [P.C.] voluntarily engaged in group sex with him with inherent disbelief----
The possibility that a woman would consent to have sex with two or more men at the same time strikes most people as bizarre, disgusting, and unlikely. In fact, a recent survey found that only 1% of women found group sex appealing. Thus, a jury may be inclined to view a consent defense with inherent disbelief. In this regard, evidence that the complainant previously consented to group sex with two or more men including one or more of the defendants does have legitimate probative value on the issue of consent, beyond the forbidden yes/yes inference. In any event, courts tend to admit such evidence.
Because Lewis Gagne was not permitted to introduce the evidence of the pri- or instances of where [P.C.] engaged in or sought to engage in sex with him and another man, a critical question on the jury’s mind — how would anyone consent to this kind of three-way group sexual activity, was left unanswered. Unanswered by evidence, the jury would be likely to conclude that she did not consent to such activity.
Appellee Br. at 16-17 (Sept. 20, 2010) (quotation and editorial marks, and citations omitted).
But this argument had been raised to the Michigan Supreme Court in no less than four cases, and had been rejected each time. An eight-year-old boy’s prior acts of fellatio were inadmissible, even though it was critical for the defense to explain how the boy had such exacting knowledge of the act. Arenda, 330 N.W.2d at 815. A white man’s prior solicitation of anal sex from black men was inadmissible, even though jurors would otherwise find such activities “aberrant” and consent unbelievable. Hackett, 365 N.W.2d at 122. Similarly, a woman’s consensual sex with other men while she was married and pregnant was inadmissible even though, without such evidence, the jurors would find such activities “aberrant” and consent unbelievable. Id. A married couple’s history of “digital-anal pen: etration” was inadmissible even though jurors would otherwise find it “abnormal” and assume that no woman would consent to such a “deviant” invasion of her body. Adair, 550 N.W.2d at 507. The Michigan Court of Appeals cited each of these cases and was not only aware of these holdings, but as an intermediate appellate court, was bound by them.
It might be that Gagne is correct that, as a matter of his defense, this was the “most relevant evidence” and the state courts were wrong to exclude it, but “whether the trial judge was right or wrong is not the pertinent question under AEDPA,” Renico, 130 S.Ct. at 1865 n. 3. The question is whether the last state court’s decision was “objectively unreasonable,” Williams, 529 U.S. at 409, 120 S.Ct. 1495. One might disagree with the reasons given by the Michigan Court of Appeals — that the evidence was not sufficiently probative because the third participant(s) in and the surrounding circumstances of these other incidents were different, or that exclusion of the evidence was not particularly prejudicial because the jury heard about the Tony’s Lounge Incident — but these are nonetheless legitimate reasons, and certainly not “so lacking in justification” as to be “be *518 yond any possibility for fairminded disagreement,” see Harrington, 131 S.Ct. at 787.
The “group sex” at issue in this case involved P.C.’s prolonged sex (oral, vaginal, and anal) in various positions with both men concurrently, spankings, and repeated'vaginal and anal penetrations with multiple sex toys, vibrators and a wine bottle, resulting in vaginal and rectal bleeding and bruising. To be sure, jurors might find this behavior outlandish, aberrant, abnormal, bizarre, disgusting, or even deviant and, therefore, find it incredible or inherently unbelievable that P.C. would have consented to it. And it is not unreasonable to surmise that those jurors would be more likely to find consent if they were told that she had engaged in— and offered to engage in — group sex at least two other times in the past. But, again, that is not the question. The question is whether the Michigan Court of Appeals was “objectively unreasonable” in rejecting this argument. Considering the general antipathy for propensity evidence, the State’s established interest in rape-shield laws, and the Michigan Supreme Court’s repeated rejection of this argument, we cannot say that the decision in this case was “beyond any possibility for fairminded disagreement.”
IV.
Because Lewis Gagne cannot demonstrate that the decision of the Michigan Court of Appeals was objectively unreasonable, we REVERSE the district court and deny the petition.

. The appellate court also rejected claims of improper exclusion of other evidence, prosecutorial misconduct, ineffective assistance of counsel, insufficiency and weight of the evidence, cumulative error, and error in sentencing.

. Three Justices of the Michigan Supreme Court dissented from the denial. Justices *498 Cavanagh and Kelly would have reversed and remanded for a new trial, while Justice Mark-man would have granted leave to appeal. None of the three wrote separately to explain the basis for his or her dissent. See Gagne, 673 N.W.2d at 755.

. Gagne also claimed improper exclusion of evidence, prosecutorial misconduct, and ineffective assistance of counsel. The district court denied relief on those claims. See Gagne, 2007 WL 1975035, 2007 U.S. Dist. LEXIS 47616. Gagne did not file any cross-appeal in this court to challenge the district court's denial of those claims.

. Gagne actually listed six items together in the motion, but voluntarily withdrew this one almost immediately: "e. Defendant [Gagne] proposes to offer evidence that the alleged victim [P.C.] always gets 'horny' when she smokes crack cocaine as the evidence will *499 reveal occurred on the date of the alleged offense.”

. Gagne did not raise any constitutional argument in his "Motion and Offer of Proof,” but that is hardly surprising inasmuch as that particular motion is a specific aspect of the Michigan Rape Shield Law, see § 750.520j(2).

6. The Rule cited here, Michigan Rule of Evidence 404: "Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes,” states, in pertinent part:
(a) Character evidence generally. Evidence of a person’s character or a trait of character is not admissible for the purpose *500 of proving action in conformity therewith on a particular occasion, except:
(3) Character of victim of sexual conduct crime. In a prosecution for criminal sexual conduct, evidence of the alleged victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease;
(b) Other crimes, wrongs, or acts.
(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in
doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.
Mich. R. Evid. 404 (effective June 1, 1995). This version was in effect at the time of Gagne's trial (circa February 2001). Rule 404 was amended on May 21, 2001 (effective September 1, 2001), but the only change to the above-quoted passage was the substitution of "alleged victim” for "victim” in subrule (a)(3). See Notes to the 2001 Amendment.

7. This was defense counsel’s first assertion of a constitutional right to this evidence.

. It is perhaps noteworthy that the analysis contained herein would have been markedly different if the trial court had decided the issue based on the "standard” rules of evidence rather than the Rape Shield Law, inasmuch as it is the established law of this Circuit (and, therefore, presumptively reasonable) that "[t]he Sixth Amendment right to present a complete defense ... does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence." Wynne v. Renico, 606 F.3d 867, 871 (6th Cir.2010) (quoting United States v. Lucas, 357 F.3d 599, 606 (6th Cir.2004)); accord United States v. Armstrong, 436 Fed.Appx. 501, 505 (6th Cir.2011).

. Although we refer to only Gagne, both defendants appealed, raising similar claims, and the Michigan Court of Appeals consolidated the appeals. See Swathwood, 2003 WL 1880143, at *1.

. Indeed, the Michigan Court of Appeals understood Gagne and Swathwood to be arguing "that the fact that [P.CJ’s and Gagne's sexual history included another person was merely an aspect or characteristic of their sexual relationship.” Swathwood, 2003 WL *503 1880143, at * 1. But it did not address this question and instead affirmed on another basis. Id. at *2 ("Even viewing the evidence as defendants urge, as merely an instance of prior sexual conduct with defendant, an aspect of which was the inclusion of other persons, the evidence is not automatically admissible.”)

. Gagne did not cite either Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), or Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), in his brief to the Michigan Court of Appeals. Nor did the Michigan Court of Appeals cite either in its opinion.

. In fact, one might reasonably consider this less a "constitutional” argument than an argument about the application of the Michigan Rape Shield Law, which contains the provision: “unless and only to the extent that the judge finds that ... its inflammatory or prejudicial nature does not outweigh its probative value,” M.C.L. § 750.520j(l).

. See also id. ("Defendant [Hackett] also claims that evidence of the complainant’s reputation for, or specific acts of, homosexual conduct, with black male prisoners in particular, should have been admitted as necessary to establish his defense of consent. Defendant [Hackett] argues that such evidence would have made it more probable for the jury to believe that the complainant, a white male prisoner, consented to or solicited the act of sodomy with the defendant, a black male prisoner.”); id. at 129 (Kavanagh, J., concurring) ("The evidence was also needed, argued [Hackett’s] defense counsel, to circumvent an assumption that it would be improbable that a white male prisoner would consent to sodomy by a black male prisoner.”); id. at 133 (Levin, J., dissenting) ("Hackett’s written motion for admission of the evidence asserted that it was relevant to show that the complainant would be likely to consent to or solicit sexual contact with Hackett, to rebut the assumption that a white man would not consent to or solicit sodomy by a black man, and to impeach the complainant’s preliminary examination testimony denying that he was a homosexual.”).

. See also id. at 129 (Kavanagh, J., concurring) ("[Paquette] also sought to introduce testimony of what he said was a circumstance similar to the one for which [he] was on trial, that shortly before the incident alleged the complainant had met a man in a bar and left with him to enjoy sexual relations that night in a motel."); id. at 133-34 (Levin, J., dissenting) ("Paquette sought to introduce evidence ... that [the victim] had engaged in consensual sexual relations with a stranger that she had met in a bar.... The evidence was offered as relevant on the issue of consent.”).

. Recall that, in this brief, Gagne did not cite Chambers or Olden, and only cited Crane for the general proposition that an accused is *509 entitled to present a complete defense. See n. 11, supra.

. The State did not cite or refer to Crane v. Kentucky even one time in its response. That is because Gagne had not pointed to Crane as the clearly established federal law that he was claiming the Michigan Court of Appeals had unreasonably applied. The State did not cite to Olden in its response either, and cited Chambers only in a parenthetical to United States v. Torres, 937 F.2d 1469, 1474 (9th Cir.1991), which it cited for the proposition that "the right to present a defense is not absolute and may have to bow to accommodate other legitimate interests in the criminal trial process."

. Gagne did not cite Chambers at all, and he cited Olden only for the proposition that the jury "might have received a significantly different impression" if the excluded evidence had been presented. Appellee Br. at 19.

. Neither the majority opinion nor the concurrence cited either Chambers or Olden.

. Judge Kethledge argues in dissent that we should find the Michigan Court of Appeal’s decision to be “contrary to ” the clearly established holdings of three Supreme Court decisions: Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), Crane v. Kentucky, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), and Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988). But we cannot.
There are "two scenarios” in which a "state-court decision falls within [§ 2254(d)(1) ]'s ‘contrary to' clause”: (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases”: or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.” Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).
None of the three Supreme Court cases that Judge Kethledge cites could be considered "governing law” as to the issue before us here — i.e., the application of Michigan’s Rape Shield Law and the constitutional limits thereon. The first case, Chambers, 410 U.S. at 294, 93 S.Ct. 1038, concerned Mississippi's hearsay and voucher rules. The next, Crane, 476 U.S. at 687, 106 S.Ct. 2142, concerned Kentucky’s procedure of barring evidence about the voluntariness of a defendant's pretrial confession. And Olden, 488 U.S. at 232, 109 S.Ct. 480, concerned a state trial court’s exclusion of evidence based on improper "Speculation as to the effect of juror’s racial biases.” None of these holdings directly governs the present issue. See Premo v. Moore, 562 U.S. -, 131 S.Ct. 733, 743, 178 L.Ed.2d 649 (2011) (explaining that, under AEDPA’s "contrary to” analysis, a federal habeas court may not "transpose[ ] [a Supreme Court holding] into a novel context”).
Nor do we believe that Judge Kethledge is suggesting as much. Instead, Judge Kethledge finds that the present "case is indistinguishable from Chambers that ‘‘[t]he analysis flows in the same channels here” as in Crane; and that, "in this case, the Michigan Court of Appeals confronted a 'set of facts that are materially indistinguishable from’ [those in] a decision of the Supreme Court, namely Olden." See Kethledge, J., Dissenting, infra. To be sure, Judge Kethledge has painstakingly applied the present facts to the circumstances of those Supreme Court cases, drawn clever analogies between the factual underpinnings, and argued that the facts of this case should lead to the same outcomes as those cases. But the present facts are clearly distinguishable from a case about a third-party confession (Chambers), a case about a defendant’s allegedly coerced confession (Clay), or a case about a rape victim’s interracial relationship (Olden).
Judge Kethledge has applied the holdings of those three Supreme Court cases to the present facts, and has done so persuasively. But that does not demonstrate that the outcome is "contrary to” the holdings of those cases. Which is to say that the "contrary to” and "unreasonable application” clauses are different things, with independent meanings. Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing Williams, 529 U.S. at 405, 120 S.Ct. 1495). As the Supreme Court explained in Williams:
"On the other hand, a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner’s case would not fit comfortably within § 2254(d)(l)'s 'contrary to’ clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies Strickland as the controlling legal authority and, *513 applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in Strickland as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the Strickland framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as ‘diametrically different' from, 'opposite in character or nature’ from, or 'mutually opposed’ to Strickland, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how Strickland ought to be applied in that particular case, the decision is not ‘mutually opposed' to Strickland itself.
"Justice STEVENS would instead construe § 2254(d)(l)’s 'contrary to' clause to encompass such a routine state-court decision. That construction, however, saps the ‘unreasonable application’ clause of any meaning. If a federal habeas court can, under the 'contrary to’ clause, issue the writ whenever it concludes that the state court’s application of clearly established federal law was incorrect, the ‘unreasonable application’ clause becomes a nullity. We must, however, if possible, give meaning to every clause of the statute. Justice STEVENS not only makes no attempt to do so, but also construes the ‘contrary to’ clause in a manner that ensures that the 'unreasonable application’ clause will have no independent meaning. We reject that expansive interpretation of the statute. Reading § 2254(d)(l)’s ‘contrary to’ clause to permit a federal court to grant relief in cases where a state court’s error is limited to the manner in which it applies Supreme Court precedent is suspect given the logical and natural fit of the neighboring ‘unreasonable application’ clause to such cases.”
Williams, 529 U.S. at 406-07, 120 S.Ct. 1495 (internal citations omitted).
Even if we were to assume for the sake of argument that the Michigan Court of Appeals’s decision in the present case — to exclude evidence of the victim’s past willingness to engage in consensual group sex — is inconsistent with the principles established by the Court in Chambers, Clay, and Olden, the decision is not “mutually opposed to [Chambers, Clay, or Olden ] itself.” Chambers itself specifically protects a defendant’s right to introduce evidence about a third-party’s confession to the charged murder. Clay specifically protects a defendant’s right to introduce evidence about the circumstances surrounding his own confession to the charged murder. And Olden specifically protects a defendant’s right to introduce a witness’s inter-racial relationship as evidence of that witness’s bias or motive to lie, even if the trial court thinks the jurors’ racial biases will prejudice the jury against that witness.
Judge Kethledge has effectively adopted Justice Stevens’s view of the "contrary to” clause — a view rejected by a majority of the Supreme Court in Williams. We are not at liberty to join him.

. Recall that Gagne had argued to the Michigan Court of Appeals that ‘‘[t]he idea that a woman would have sex with two or more men at the same time strikes most people as bizarre and a jury, therefore, [would] be inclined to view a consent defense in a case like this one with inherent disbelief.” See Section II.B, supra.